Ben SHINN and Ellen M. SHINN *v.*
FIRST NATIONAL BANK OF HOPE, ARKANSAS

CA 80-216                                    606 S.W. 2d 154
Court of Appeals of Arkansas
Opinion delivered October 15, 1980

*Chambers & Chambers*, by: *Melvin T. Chambers*, for appellants.

*James H. Pilkinton, Jr.,* for appellee.

DAVID NEWBERN, Judge. This appeal is from a judgment in favor of the holder of an overdue promissory note. The appellants, who were the makers of the note, contend the judgment was in error because they proved fraudulent conduct on the part of the appellee in dealing with the appellants. The chancellor found that the alleged instances of fraud were not proven, and we agree.

On June 10, 1975, appellant Ben Shinn, Olin Lewis and Joe Mercer executed, as co-makers, a note in favor of the appellee in the amount of $32,000. The testimony shows that Shinn and Lewis were acting as accommodation makers to enable Mercer to purchaser the Hope Furniture Company with the borrowed money. The sole collateral pledged in support of the note was a $20,000 certificate of deposit which belonged to Mr. Shinn. Mr. Hays the President and Loan Officer of the appellee, testified that neither Mr. Mercer nor Mr. Lewis, who was Mercer's father-in-law, could present a sufficient financial statement to justify the loan, and that the loan was made based primarily upon the credit of Mr. Shinn.

As the note originally appeared, it provided for quarterly payments of $3,000. On September 10, 1975, the face of the note was changed by a bank employee to provide for quarterly payments of $750. Mr. Hays' testimony shows the parties contemplated that $3,000 per year would be paid on the note, and thus the change was to correct a scrivener's error. Several $750 payments were made on the note, the last one being made August 23, 1976, but the note ultimately became overdue.

On April 9, 1976, the Bank had, by letter, denied a loan application from Mr. Shinn in the amount of $150,000, the proceeds from which he had intended to use in a Texas motel operation. The Bank cited, as one reason for denying the $150,000 loan, "the situation with the Hope Furniture-Joe Mercer loan as it is." The letter closed by saying "we will work closely with Joe Mercer and his business operation here in Hope."

On August 4, 1976, the appellee received from a Mr. Kusin a notice required by the part of the Uniform Commercial Code which deals with bulk transfers, Ark. Stat. Ann., 85-6-105 (Add. 1961), stating that Kusin proposed to purchase the Hope Furniture Company from Mr. Mercer and that creditors should file claims by August 16, 1976, as the sale was to take place August 18. With the notice was enclosed a statement of the terms of the proposed sale. It provided the sale proceeds would be used to pay certain creditors with the balance to go to the Bank toward Mercer's obligation to the Bank. The appellee had no security interest in the assets of Mr. Mercer or Hope Furniture Company as collateral for the original $32,000 note. On August 20, 1976, Mr. Kusin sent the appellee a check in the amount of $8,-747.31. The appellee applied $1,847.44 to the $32,000 note. Three thousand dollars was applied to retire a separate $3,-000 note Mercer had made to the Bank for purchase of a truck, leaving $3,806.47 which the appellee applied to overdrafts in Mr. Mercer's checking account.

The appellants, on November 15, 1976, made a second note payable to the Bank in the amount of $29,540.96, which was the amount due, including interest, on the note described above. In exchange for the second note, the Bank assigned the first note to the appellants without recourse. The $20,000 certificate of deposit was repledged by the appellants as collateral for the new note. When this note became overdue, the Bank applied the certificate of deposit, and brought suit for the balance of $9,540.96, plus interest.

It was not until November 4, 1976, that the appellee demanded payment of the $32,000 note from Mercer, and it was not until November 15, 1976, that the appellant's note,

which is the subject of this suit, was executed in exchange for assignment of the $32,000 note.

Other facts will be stated as we discuss the appellants' allegations of errors.

## 1. *Alteration of the note.*

The appellants contend that because the original $32,-000 note was altered, they were not liable on it and thus should not be liable on the note they executed in exchange for the assignment. The contention is based upon Ark. Stat. Ann., § 85-3-407(2)(a) (Add. 1961). The statute provides that an alteration "which is both fraudulent and material" by the holder of an instrument discharges a party whose contract is thereby changed, unless the party assents. The appellants showed the change might have been material, as had Mercer's quarterly payments been $3,000 rather than $750, the obligation on the original note at the time the default occurred would have been considerably less. There is however, no showing whatever that the alteration was done for fraudulent purposes. The chancellor obviously was satisfied with the explanation of the appellee's president that no one expected the payments to be $12,000 per year at the time the note was made. His finding is supported by the evidence and not clearly erroneous. A.R. Civ. P. 52.

## 2. *Failure to assert claim.*

The appellants' second contention is that the appellee had an obligation to assert its claim on the $32,000 note against Mercer and Hope Furniture Company at the time notice was received that the company was to be sold. Although it is not clear from the appellants' brief, their contention apparently is that had the Bank filed its claim with Kusin, it would have been paid in full by him out of the proceeds of the sale. The appellants imply that because Mr. Hays went to Texarkana to solicit Mr. Kusin's business with respect to Hope Furniture Company, the Bank, in exchange for Kusin's account, agreed not to collect from the proceeds of the sale to satisfy Mercer's note. This argument is based on nothing but speculation. The appellants have not shown that

there was any duty whatever upon the Bank to claim against the sales proceeds or that the assets of the furniture company were in any way to be considered collateral for Mercer's note.

The appellants seem to contend the Bank misled them by agreeing to "work with" Mercer in the April letter. We find no merit in that argument. The new loan to Mr. Shinn was being denied, among other reasons, because the Bank apparently recognized the Mercer, Lewis, Shinn note was undersecured. The remark in the letter created no special duty, and the appellants cite no authority even suggesting it did.

### 3. Burden of proof.

The appellants next contend the trial court erred in holding they had the burden of proof on the question of "bad faith" with respect to the Bank's failure to assert its claim against Kusin after the notice of sale was given. The appellants argue this point with no citation of authority whatever, and, as it is not an obviously correct proposition, we need not consider it. Arnold v. Arnold, 261 Ark. 734, 553 S.W. 2d 251 (1977); Hazen v. City of Booneville, 260 Ark. 871, 545 S.W. 2d 614 (1977).

### 4. Amendment of pleading.

Citing A.R. Civ. P. 15(b), the appellants contend they should have been allowed to amend their answer after the trial to state a claim to recover the $20,000 represented by the certificate of deposit which was applied by the Bank to the appellants' indebtedness. The appellants contend the evidence showed that Mr. Hays knew about the sale of the furniture company and the material changes on the original note and that at the time he discussed the forfeiture of the certificate of deposit with Mr. Shinn, Mr. Shinn was unaware of these events. The court denied the proposed amendment to conform to the evidence upon the appellees' objection that it would be prejudicial to it. The Bank's contention is that such an amendment which would, in effect, have amounted to introduction of a counterclaim could have been successfully rebutted had it been an issue at the trial and that such a belated amendment would have the effect of precluding the

appellee from presenting vital evidence. An example of the kind of item the Bank suggests it would have introduced had the counterclaim been an issue is a certified judgment in favor of Ben Shinn against Olin Lewis on the $32,000 note which was assigned by the appellee to the appellants.

Rule 15(b) gives the trial court the authority to permit amendment of a pleading even after judgment, however, that subsection of the rule has to do with instances in which "issues not raised by the pleading are tried by expressed or implied consent of the parties." Here, it is apparent that the appellee did not at any point consent to trial of any counterclaim, and it was not an issue. Although F.R.C.P. 15(b) has been interpreted as permitting a defendant to raise a counterclaim, even after judgment, the cases permitting it have done so where it was clear all the relevant evidence was in the record[1] or the issue was clearly one the parties contemplated as being before the court.[2] In our opinion, had the chancellor allowed the requested amendment, the result would have been the same, as he found no fraud which would have had to have been the basis of the counterclaim.

### 5. *Impairment of collateral.*

The appellants cite the section of the Uniform Commercial Code dealing with "impairment of recourse or collateral." Ark. Stat. Ann., § 85-3-606 (Add. 1961). This section refers to the holder of an instrument, who:

> without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary. . . .

---

[1] *Dale Benz, Inc.* v. *American Cas. Co.*, 303 F. 2d 80 (C. A. 9, 1962).
[2] *Rogers* v. *Union Pac. R. Co.*, 145 F. 2d 119 (C.A. 9, 1944.)

It provides that such a holder "discharges any part to the instrument" to the extent he does so without such party's consent.

The appellant's brief has materially misquoted the statute as follows:

"Impairment of recourse or of collateral. — (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(a) . . . with knowledge of recourse agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person."

As "quoted" by the appellants, the statute is made to appear to be effective against a holder who releases an obligor with knowledge of recourse *the holder* may have against the obligor. The statute obviously contemplates knowledge of recourse *the party*, in this case Mr. Shinn, may have had against the person discharged or released.

It is enough to say that neither Mr. Shinn nor the Bank had any "recourse" against Kusin, and the Bank took no action we can find which could be characterized as releasing or discharging Kusin from any obligation.

## 6. *Sufficiency of abstract.*

The appellee contends that it was required to supplement the abstract to the extent of 13 pages filed with its brief for which it should be reimbursed a printing cost and attorney fee. While we agree the appellant's abstract left much to be desired, we choose, given the circumstances of this case, to exercise the discretion permitted us by Rule 9, and we decline to award those specific costs and fees.

## *Conclusion*

W concur in the chancellor's determination that the appellants attempted to prove fraud as a defense to the claim on the note failed. Therefore, the judgment is affirmed.

Affirmed.

JUDGE PILKINTON did not participate.