Robbie R. JONES *v.* DOUBLE "D" PROPERTIES, INC., an Arkansas Corporation and Charlie Daniels, Commissioner of State Lands, State of Arkansas *v.* Buck D. JONES

02-717                                                98 S.W.3d 405

Supreme Court of Arkansas
Opinion delivered February 20, 2003

[Petition for rehearing denied April 3, 2003.]

*James R. Filyaw*, for appellant Robbie Jones.

*Oscar Stilley*, for appellant Buck Jones.

*David Charles Gean*, for appellee Double "D" Properties.

*Mark Pryor*, Att'y Gen., by: *Anthony W. Black* and *Carol A. Lincoln*, Ass't Att'ys Gen., for appellee Charlie Daniels.

TOM GLAZE, Justice. This case involves a married couple, Robbie and Buck Jones, who reside in Ft. Smith. Robbie Jones was the record owner of their resident property since 1963, and, over the ensuing years, she handled the payment of the couple's taxes and bills. However, beginning in 1996, Mrs. Jones stopped paying her real estate taxes. As a result, she became delinquent on her real property taxes, which led to the sale of the land to Double "D" Properties, Inc. After the sale and the State Land Commissioner's issuance of a limited warranty deed to Double "D", Mrs. Jones brought suit against Double "D" and the Commissioner. She alleged the Commissioner had failed to comply with the notice provisions of Act 626 of 1983, as amended, and, therefore, the sale was void and the Commis-

sioner's deed should be cancelled. Double "D" and the Land Commissioner answered, denying Mrs. Jones's allegation, and, in addition, Double "D" counterclaimed, seeking an order directing Mrs. Jones to vacate. Double "D" subsequently filed a third-party complaint against Buck Jones, seeking the same relief as previously requested against Robbie. Robbie's attorney filed an answer on Mr. Jones's behalf, reasserting the Joneses' claims that the sale of their residence was not in compliance with Act 626.

. This dispute was tried on November 2, 2001. The trial judge, by letter opinion entered on January 2, 2002, held that the Commissioner's sale of the Joneses' delinquent property complied with Act 626, and the Commissioner's deed issued to Double "D" was valid. Following the judge's ruling, Buck Jones's new attorney filed a counterclaim, alleging that the Joneses' property had been illegally assessed, that an unlawful, unconstitutional amount of taxes had been imposed, and, therefore, the Commissioner's deed should be set aside. In addition, Mrs. Jones tried to question Act 626's notice requirements as being unconstitutional and depriving the Joneses of their rights of due process. The trial court considered these new arguments at a hearing on March 1, 2001, and it entered two orders on April 12, 2002, holding again that the Commissioner had strictly complied with the notice of provisions of Act 626, and further deciding that the Joneses had failed to raise their constitutional arguments in a timely manner. The Joneses challenge the trial court's decisions in this appeal.

We first address whether the State Land Commissioner complied with the notice requirements of Act 626. The pertinent provision is codified at Ark. Code Ann. § 26-37-301 (Repl. 1997), which provides as follows:

> (a)(1) Subsequent to receiving tax-delinquent land, the Commissioner of State Lands shall notify the owner, at the owner's last known address, by certified mail, of the owner's right to redeem by paying all taxes, penalties, interest, and costs, including the cost of the notice.

> (2) All interested parties known to the Commissioner of State Lands shall receive notice of the sale from the Commissioner of State Lands in the same manner.

> (b) The notice to the owner or interested party shall also indicate that the tax-delinquent land will be sold if not redeemed prior to the date of sale. The notice shall also indicate the sale date, and that date shall be no earlier than two (2) years after the land is certified to the Commissioner of State Lands.

In cases involving redemption of tax-delinquent lands, this court has stated that strict compliance with the requirement of notice of the tax sales themselves is required before an owner can be deprived of his or her property. *Pyle v. Robertson*, 313 Ark. 692, 858 S.W.2d 662 (1993); *Trustees of First Baptist Church v. Ward*, 286 Ark. 238, 691 S.W.2d 151 (1985).

In *Wilson v. Daniels*, 64 Ark. App. 181, 980 S.W.2d 274 (1998), a case much like the one before us, our court of appeals construed § 26-37-301. There, appellant lived in El Dorado Hills, California, but owned property in Pine Bluff. Taxes on the Pine Bluff property had not been paid since 1990, and the property was certified delinquent in July of 1994. On September 15, 1994, the Land Commissioner mailed a certified letter to Wilson's last known address in the tax records notifying her that the taxes on the Pine Bluff property were delinquent, that she could redeem the property, and that the property would be offered for sale on September 17, 1996. The letter was addressed to Wilson in Folsom, California; it was returned marked "attempted not known." Upon learning of Wilson's correct address, a second certified letter was mailed to her on June 25, 1996, in El Dorado Hills, California, notifying her that the property was delinquent, that she could redeem the property, and that the property would be offered for sale on September 17, 1996. This letter was returned "unclaimed or refused."

Wilson denied ever receiving either of the letters mailed by the Land Commissioner, and she testified that she had called the county and state offices to inquire why she had not received her tax statements; she also gave that office her correct address. The trial court found that there was a problem with the address and tax billings from the tax office; however, the court concluded that the first notice that was mailed to the wrong address was cured by the second letter that was mailed to the correct address. The court

ruled that the Commissioner had fully complied with the applicable statutes.

On appeal, the *Wilson* court affirmed, stating that Ark. Code Ann. § 26-37-301 "provides that after receiving tax-delinquent land, the Commissioner of State Lands shall notify the owner of his/her right to redeem, notify that the land will be sold, and notify the owner of the sale date." *Wilson*, 64 Ark. App. at 184. The court continued as follows:

> Under this section, the Commissioner is required to notify the owner, at the owner's last known address by certified mail. After reviewing the evidence, it is clear that the Commissioner, subsequent to receiving the tax-delinquent land, sent certified notice to [Wilson's] last known address. Even though the first notice mailed by the Commissioner was mailed to the wrong address, the Commissioner sent a second notice to the correct address of [Wilson] where she had resided since 1980. We cannot say that the chancellor's decision that the second notice satisfied the statutory requirement was clearly erroneous.

*Id.*

The *Wilson* case is factually analogous to the present case. In both instances, the certified letter was returned marked "unclaimed." Nevertheless, in *Wilson*, the court of appeals held that the Commissioner had complied with the requirements of the statute. In the instant case, the testimony was undisputed that the Commissioner mailed a certified letter, as required, and that the post office made the appropriate attempts to deliver it. The statute does not require the Land Commissioner to take every step possible to see that the letter arrives in the property owner's hand; it only requires that the Commissioner "shall notify the owner, at the owner's last known address, by certified mail, of the owner's right to redeem [the property.]"

Jones concedes that this case is factually similar to *Wilson*, but asserts that the court of appeals nevertheless "expressed reservations about deficiencies in the notice." The "reservations," however, consisted of the court's concern about the *timing* of the notice — i.e., that it could be sent relatively close in time to the time of the sale. That precise question was never an issue in this

case, as it was undisputed that the notice was sent a full two years before the scheduled sale date.

Further, Jones argues in her brief that strict compliance with the statute is required, and that, because the Legislature required the notice to be sent via certified mail, that was a clear indication that the legislature intended that the taxpayer be given actual notice of the jeopardy to his property. However, in construing a statute, it is the court's duty to construe it just as it reads. *St. Paul Fire & Marine Ins. v. Griffin Const.*, 338 Ark. 289, 993 S.W.2d 485 (1999); *Heard v. Payne*, 281 Ark. 485, 665 S.W.2d 865 (1984); *City of North Little Rock v. Montgomery*, 261 Ark. 16, 546 S.W.2d 154 (1977). When we construe a statute, we look first at the plain language of the statute and give the words their plain and ordinary meaning. *See ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998). If the language of a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Griffin Constr., supra.* Here, the statute requires notice "by certified mail." The Land Commissioner sent notice to Jones by certified mail. Therefore, the trial court did not err in concluding that the Commissioner had strictly complied with the statute.

Next, the Joneses argues that the trial court erred in concluding that Mrs. Jones's constitutional arguments were not timely. In its April 12, 2002, order, dealing with the issues raised in Mrs. Jones's "post trial brief," the trial court noted first that the matter was tried to the court on November 2, 2001. After receiving post-trial briefs, the court entered a letter opinion on January 2, 2002, and requested that counsel for Double "D" prepare a precedent and present copies to the other attorneys; if no objections were received within five days, the precedent would be signed and entered. The April 12 order then noted that Mrs. Jones "filed [a] post-trial brief [on January 16, 2002], which the court consider[ed] a motion for new trial, within the five days. The judgment has not been signed and entered pending resolution of the issues presented in [Mrs. Jones's] motion and the responses filed by [Double "D" and the Land Commissioner]."

The January 16 motion filed by Mrs. Jones alleged that Act 626 of 1983 was constitutionally defective as to its notice requirements with respect to the right of redemption, and that it was therefore a deprivation of her right of due process. In her brief, Jones argued that she and her husband had a vested interest in the property in question that entitled them to actual notice of the proceedings, and that mere compliance with the statutory scheme did not satisfy the requirements of due process. Further, Jones asserted that the fact that no notice whatsoever is required for the second redemption period under the statute, which runs for a period of thirty days from the time that the land commissioner issues the tax deed; the omission of any notice requirement about the second redemption period also rendered the statute unconstitutional.

In its order denying Jones's motion, the trial court found that the constitutional issues were never raised at trial by Mrs. Jones, and that she had not properly objected to the alleged error of law, as is required by Ark. R. Civ. P. 59(a)(8). The court submitted that the only possible ground for a new trial was Rule 59(a)(8), which provides that a new trial may be granted when there has been an error of law occurring at the trial and objected to by the party making the application. Therefore, the court wrote, "since the aggrieved party has failed to establish grounds, pursuant to Rule 59(a), for granting a new trial, the court does not have the authority to open the record to amend its findings of fact and conclusions of law."

On appeal, Mrs. Jones asserts that the trial court erred in concluding that her constitutional issues were not properly raised. She maintains that Rule 59 was inapplicable, because no judgment had yet been entered as of the date she filed her motion, and, for the first time, she asserts that "it would have been more proper that the motion . . . be treated by the court as being governed by Rule 52(b)(1)." Rule 52 pertains to requests for findings by the trial court, and permits a party to move the trial court to amend its findings of fact within ten days after entry of judgment. Here, however, Jones never suggested to the trial court that it should consider her motion as a request for findings under Rule 52.

■ In any event, the trial court did not err in concluding that Jones's raising of the constitutional issue was untimely. Ark. R. Civ. P. 59 governs the granting of new trials, and provides that a new trial may be granted for any a number of grounds materially affecting the substantial rights of a party, including, as noted above, an error of law occurring at the trial and objected to by the party making the application. Ark. R. Civ. P. 59(a)(8). The Rule further states that, "[o]n a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."

Rule 59(b) establishes when a new trial motion shall be filed, and reads as follows:

> (b) Time for Motion. A motion for a new trial shall be filed not later than 10 days after the entry of judgment. *A motion made before entry of judgment shall become effective and be treated as filed on the day after the judgment is entered.* If the court neither grants nor denies the motion within 30 days of the date on which it is filed or treated as filed, it shall be deemed denied as of the 30th day.

(Emphasis added.)

■ Our case law is well-settled that a motion for new trial is addressed to the sound discretion of the trial court, and the trial court's refusal to grant it will not be reversed on appeal unless an abuse of discretion is shown. *Sharp Co. v. Northeast Ark. Planning & Consulting Co.*, 269 Ark. 336, 602 S.W.2d 627 (1980). An abuse of discretion means a discretion improvidently exercised, *i.e.*, exercised thoughtlessly and without due consideration. *Ford Motor Co. v. Nuckolls*, 320 Ark. 15, 894 S.W.2d 897 (1995); *Nazarenko v. CTI Trucking Co.*, 313 Ark. 570, 856 S.W.2d 869 (1993).

■ ■ The trial court here found that the issues raised in Mrs. Jones's motion for new trial were not timely raised, and therefore, the court denied her motion. This decision was correct. This court has repeatedly held that an objection first made in a motion for new trial is not timely. *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002). Stated another way, an issue must be

presented to the trial court at the earliest opportunity in order to preserve it for appeal, and even a constitutional issue must be raised at trial in order to preserve it for appeal. *Foundation Telecom., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000). A party may not wait until the outcome of a case to bring an error to the trial court's attention. *Id.* The court in *Lee, supra,* stated further on this issue as follows:

> In *Selph v. State*, 264 Ark. 197, 570 S.W.2d 256 (1978), this court noted that the reason for requiring an objection before the trial court is to discourage "sandbagging" on the part of lawyers who might otherwise take a chance on a favorable result, and subsequently raise a constitutional claim if the gamble did not pay off. *Selph*, 264 Ark. at 204. *See also Wilson v. Wilson*, 270 Ark. 485, 606 S.W.2d 56 (1980); *Hodges v. State*, 27 Ark. App. 154, 767 S.W.2d 541 (1989) (allowing a party to raise an objection for the first time in a motion for new trial would give them "license to lie behind the log," waiting to see if they obtain an adverse verdict before complaining about any alleged irregularities). Because Fowler failed to raise her constitutional claim until her motion for new trial, the question is not preserved for our review.

*Lee*, 350 Ark. at 476-77.

■ Clearly, then, a party may not raise a constitutional objection for the first time in a motion for new trial. The problem here, as has been discussed, is that, at the time Mrs. Jones filed her "motion for new trial," the trial court had not entered a final order; instead, it had only issued its letter opinion dated December 27, 2001, informing the parties how the court was going to rule. However, Rule 59(b) provides that a "motion made before entry of judgment shall become effective and be treated as filed on the day after the judgment is entered." Here, the judgment was entered on April 12, 2002, which would cause the motion to become effective and be treated as filed on April 13, 2002. Applying the rules in this manner leads to the same conclusion — i.e., that the constitutional issues were not raised timely. This result serves the purpose of the rule, discussed in *Lee, supra*: a party should not be permitted to wait until he or she knows how the trial court is going to rule, and then "subsequently raise a constitutional claim if the gamble [does] not pay off." Therefore, we

conclude that the trial court did not err in finding that Jones's constitutional arguments were not timely.

As previously discussed, Buck Jones was initially brought into this case as a third-party defendant by Double "D" when it was discovered that Mrs. Robbie Jones was married.[1] At that time, Mr. Jones was represented by Mrs. Jones's attorney, James Filyaw. After the November 2001 trial, however, Buck Jones had a new attorney appear on his behalf. On January 16, 2002, Buck Jones filed a pleading captioned "Cross Claim Complaint,"[2] (hereafter termed the "counterclaim") wherein he alleged for the first time that the taxes, claimed by the State to be delinquent, were assessed as the result of an illegal reappraisal, and as such, the taxes constituted an illegal exaction.

On January 24, 2002, Double "D" filed a motion to dismiss the "counterclaim," arguing that the pleading filed by Mr. Jones should be considered a compulsory counterclaim that should have been filed before the trial on the merits of the case. The Commissioner also filed a motion to dismiss, asserting that the issues raised in the "counterclaim" were not presented to the trial court during the November 2, 2001, hearing and pointing out that the court had not given leave to "cross claimant" to raise the issues now.[3]

The trial court dismissed Mr. Jones's "counterclaim" on the basis of Ark. R. Civ. P. 13(a), which provides as follows with respect to compulsory counterclaims:

---

[1] According to her testimony, when the Fort Smith property was purchased in 1963, Mr. Jones was unavailable, and Mrs. Jones signed the papers on the house herself; the deed was only issued in her name.

[2] Such a creature does not exist in the Rules of Civil Procedure, which provide that "[t]here shall be a complaint and an answer; a counterclaim; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third party answer, if a third party complaint is served. No other pleadings shall be allowed." Ark. R. Civ. P. 7(a).

[3] The Commissioner also argued that the issues raised in the "counterclaim" related to the actions of the Sebastian County Assessor, who, although necessary, had not been named as a party.

> A pleading shall state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

The trial court found that Mr. Jones's claims arose out of the same transaction or occurrence that was the subject matter of Double "D"'s claim and Robbie Jones's claim, and that Mr. Jones's claim was a compulsory counterclaim. The court continued by noting that, under cases such as *Foundation Telecommunications, Inc. v. Moe Studios, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000), an issue must be presented to the trial court at the earliest opportunity in order to preserve it for appeal, and a party may not wait until the outcome of a case to bring an error to the trial court's attention. Because Mr. Jones's earliest opportunity to present his claim occurred when, on August 10, 2001, an answer was filed on behalf of Mr. Jones by his first attorney, and because Mr. Jones never presented his claim prior to or at the trial on November 2, 2001, the court concluded that this pleading failed to comply with Rule 13(a), and dismissed the "counterclaim."

On appeal, Buck Jones argues that the trial court erred in its conclusion. In support of his argument, he cites *Allison v. Long*, 336 Ark. 432, 985 S.W.2d 314 (1999), and in particular, he notes that case's statement that, under Rule 13(e), a pleader may assert his counterclaim by amended or supplemental pleading subject to the requirements of Rule 15. Rule 15, in turn, provides as follows:

> With the exception of pleading the defense mentioned in Rule 12(h)(1), a party may amend his pleadings at any time without leave of the court. Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding.

Ark. R. Civ. P. 15(a). Thus, Mr. Jones argues, to strike a counterclaim without a finding of prejudice or delay amounts to reversible error.

First, Mr. Jones ignores the fact that the trial court did find prejudice. In its findings, the court expressly found the following:

> Mr. Jones's earliest opportunity to present his claim occurred when, on August 10, 2001, an answer was filed on behalf of Mr. Jones by Mr. Filyaw. Mr. Jones never presented his claim prior to or at the trial on November 2, 2001. However, Mr. Jones waited until after he had notice of the outcome of the case, the court's letter opinion of December 27, 2001, before he raised his claim on January 16, 2002.

We further point out that the "counterclaim" to which Jones refers was not an "amended" pleading; rather, it amounts to a counterclaim that raises a bevy of new issues.[4] The court in *Allison* stated that the purpose of the compulsory counterclaim rule is the "avoidance of multiple lawsuits on the same facts with the same parties." *Allison*, 336 Ark. at 434. This is exactly what the trial court was accomplishing by dismissing Mr. Jones's "counterclaim," which, under a plain reading of Rule 13(a), was truly a compulsory counterclaim and should have been brought before or during the trial of this matter.

Even assuming that Rule 15(b) is applicable, and that Jones's "counterclaim" should be considered an amended pleading under Rule 15(b), that rule still only permits amendments to conform to the pleadings "when issues not raised by the pleadings are tried by express or implied consent of the parties." In such a situation, those issues "shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment[.]" However, this Rule presupposes that these issues were "tried by express or implied consent of the parties." *See, e.g., Shinn v. First Nat'l Bank of Hope*, 270 Ark. 774, 606 S.W.2d 154 (Ark. App. 1980) (noting that the rule has been interpreted as permitting a defendant to raise a counterclaim, even

---

[4] The so-called "cross claim complaint" is certainly not a "supplemental pleading," in the sense of Rule 15(d), which permits a party "at any time without leave of court [to] file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."

after judgment, so long as it was clear that all the relevant evidence was in the record or the issue was clearly one the parties contemplated as being before the court).

■ Here, the issues raised by Mr. Jones's "counterclaim" were never tried, whether by express or implied consent of the parties, and there was no evidence whatsoever on these issues in the record. The trial court was correct to conclude that these issues raised by Mr. Jones were not timely presented to the court, and the dismissal of his "counterclaim" is affirmed.

BROWN and IMBER, JJ., concur.

ROBERT L. BROWN, Justice, concurring. I concur with the result, but I am troubled by one aspect of the majority's reasoning. The issue raised by Buck Jones is whether he could file a compulsory counterclaim raising new issues after the circuit court had issued his letter opinion resolving the case. Clearly, he could not, because he was simply too late.

The majority's analysis, in part, deals with whether Buck Jones could amend his answer to include a counterclaim, using as a vehicle Arkansas Rule of Civil Procedure 15(a). Rule 15(a) permits amendments to pleadings "at any time without leave of the court." Rule 15(a) further states that if the circuit court determines prejudice would result to the opposing party by the amendment and the case would be unduly delayed, it may strike the amended pleading. Despite Rule 15(a), Arkansas Rule of Civil Procedure 13(a) mandates that compulsory counterclaims be filed at the time of a responsive pleading, and this is the rule that the circuit court relied on in dismissing the counterclaim. The circuit court did not even address or rule on Jones's Rule 15(a) argument. Moreover, a new pleading raising a new claim after the case is decided and a letter opinion issued is simply too late, either under Rule 13(a) regarding compulsory counterclaims or under Rule 15(a) regarding amended pleadings. Accordingly, I would not engage in a Rule 15(a) analysis, because I conclude the rule has no relevance to the facts at hand.

In addition, I would hold that amendments to pleadings raising new issues after the judge has made his decision should not

occur under any circumstances. Policy considerations do not support any other conclusion. No party should be permitted to wait for a decision and then bring, in effect, a new lawsuit after losing on the merits of his initial claim. This flies in the face of the whole notion of compulsory counterclaims and runs directly counter to an orderly resolution of litigant issues.

In short, I would not analyze whether prejudice accrued to Double D Properties under Rule 15(a), because I determine Rule 15(a) is simply inapplicable to the facts of this case. That essentially is what the circuit court decided.

For these reasons, I respectfully concur.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree with the majority that the State Land Commissioner complied with the notice requirements of Act 626 and that the issues raised in Mrs. Jones's motion for new trial were not timely raised. The majority also concludes that the trial court's dismissal of Mr. Jones's counterclaim should be affirmed. A consistent and harmonious interpretation of our rules of civil procedure governing counterclaims, amended pleadings, and motions for new trial, supports the conclusion reached by the majority. *See* Ark. R. Civ. P. 13, 15, 59 (2002).

Rule 15(a) requires the trial court to determine "that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment . . . ." By requiring a determination of prejudice or undue delay, Rule 15(a) necessarily contemplates the filing of an amendment prior to or at trial. Once the trial is over and the outcome is known, as in the instant case, prejudice is inherent and undue delay is obvious and unavoidable. On the other hand, Rule 15(b) contemplates an amendment asserted even after judgment "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties . . . ." As such, Rule 15(b) only permits amendments after trial "as may be necessary to cause [the pleadings] to conform to the evidence . . . ."

To the extent that the majority opinion might imply that a counterclaim may not be an amended pleading, I would disagree.

We have held that a counterclaim, compulsory or otherwise, may be asserted by amended or supplemental pleading subject to the requirements of Rule 15. *Allison v. Long*, 336 Ark. 432, 985 S.W.2d 314 (1999). A counterclaim asserted in the form of an amended pleading pursuant to Rule 15(a) must be filed prior to or at the trial and before the outcome is known. To hold otherwise would allow a party to file, by way of a counterclaim, what in essence is a motion for new trial and, thereby, circumvent the requirements of our rule governing the granting of new trials — Ark. R. Civ. P. 59. Likewise, Rule 15(b), which sets forth the limited circumstances under which pleadings may be amended to conform to the evidence, would be unnecessary — mere surplusage.

For the above stated reasons, I concur with the majority that the trial court's dismissal of Mr. Jones's counterclaim should be affirmed.