2010 Ark. 91

PULASKI CHOICE, L.L.C., Appellant,

v.

2735 VILLA CREEK, L.P., Appellee.

No. 09–331.

Supreme Court of Arkansas.

Feb. 25, 2010.

Stephen E. Whitwell, North Little Rock, for appellant.

Friday, Eldridge & Clark, LLP, Little Rock, by: Robert S. Shafer and Harry A. Light, for appellee.

PAUL E. DANIELSON, Justice.

The Arkansas Court of Appeals certified to this court questions concerning the publication requirements preceding the State's sale of tax-delinquent land under Arkansas Code Annotated section 26–37–201. The certified questions in this case originate with the failure of appellee 2735 Villa Creek L.P. (Villa Creek), a Texas limited partnership, to pay taxes for the years 2001 and 2002 on land it owned in Pulaski County. In April 2004, the land was certified to the Arkansas Commissioner of State Lands (Commissioner) as tax-delinquent. The Commissioner published notice of a public sale of the tax-delinquent land in the Arkansas Democrat Gazette on April 26, 2006. The notice incorrectly listed the parcel number for the land as "PARCEL 43N–007:02–018.00." The correct parcel number for the land was 43N007:00–018.00. On May 24, 2006, Areit, L.L.C., purchased the land from the State at a forfeited-land sale and conveyed the land to appellant Pulaski Choice, L.L.C. (Pulaski Choice) on July 18, 2006.

Pulaski Choice initiated an action in the Pulaski County Circuit Court to quiet title to the land on July 20, 2006. The circuit court quieted title in favor of Pulaski Choice in a September 11, 2006 decree; the circuit court filed an amended decree on September 28, 2006. Relevant to the certified questions at hand, on December 18, 2007, Villa Creek filed a motion to set aside the decree and amended decree, asserting that the Commissioner failed to comply with the publication requirements of Ark.Code Ann. § 26–37–201(b)(3) by incorrectly listing the parcel number of the tax-delinquent land and by failing to provide a complete legal description of the land. After the circuit court granted its motion to set aside the decrees quieting title, Villa Creek filed a motion for summary judgment, reasserting its argument that the Commissioner failed to comply with the publication requirements of section 26–37–201(b)(3). On December 10, 2008, the circuit court entered an order granting Villa Creek's motion for summary judgment, dismissed Pulaski Choice's complaint to quiet title, and set aside the tax sale of the property at issue and subsequent deed as void, stating that it was "of the opinion that the failure to include the correct parcel number in the published notice of sale violated Ark.Code Ann.

§ 26–37–201(b)(3), thus rendering the sale void, and that Villa Creek is entitled to summary judgment." This appeal followed.

The certified questions in this appeal involve issues of first impression and statutory interpretation. These questions, as raised by Pulaski Choice, are whether: (1) under section 26–37–201, the 2006 publication of a notice of sale of tax-delinquent land is required to include the parcel number, when the land was certified to the Commissioner as tax-delinquent in 2004; (2) substantial compliance with the publication requirements of section 26–37–201 is sufficient; and (3) section 26–37–201 is internally inconsistent.

 An issue involving notice given to a party with an interest in tax-delinquent land is a matter of statutory interpretation, which this court will review de novo on the record. *See Mays v. St. Pat Props., LLC,* 357 Ark. 482, 182 S.W.3d 84 (2004). When this court construes a statute, it will first examine the plain language of the statute and give the words their plain and ordinary meaning. *See Jones v. Double "D" Props., Inc.,* 352 Ark. 39, 98 S.W.3d 405 (2003). If the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need to resort to the rules of statutory construction. *See id.*

Arkansas Code Annotated section 26–37–201 (Supp.2009) (emphasis added) provides as follows:

**Publication of notice—Fee**

(a)(1) The Commissioner of State Lands shall publish a notice of sale of land upon which the ad valorem property taxes have not been paid in a newspaper having general circulation in the county where the land is located.

(2) The publication fee for the notice shall be the same as set forth in § 26–37–107.

(b) The notice *shall:*

(1) Contain the assessed value of the land;

(2) Contain the amount of taxes, interest, penalties, and other costs due on the land;

(3) (A) Contain the name of the owner, the legal description, and *parcel number of the land.*

(B) A part or abbreviated legal description shall be sufficient in the notice if the name of the owner and parcel number are listed;

(4) Contain a list of all interested parties; and

(5) Indicate that the land will be sold to the highest bidder if the bid is equal to at least the assessed value of the land as certified to the Commissioner of State Lands.

(c) The highest bidder shall pay all taxes, interest, penalties, and other costs.

(d) Failure of the notice to contain the information required in subsection (b) of this section invalidates an auction sale of the land.

(e) As used in this section, "interested party" has the same meaning as in § 26–37–301.

 The General Assembly amended Ark.Code Ann. § 26–37–201(b)(3)(A) in 2005 to require that the publication of a notice of sale of tax-delinquent lands include the parcel number of the land. Act of March 24, 2005, No. 1231, § 3, 2005 Ark. Acts 3794. Although Pulaski Choice acknowledges that the Commissioner published notice of the sale of the tax-delinquent property in 2006—after the amendment requiring inclusion of the parcel number became effective—it contends that the 2005 amendment to § 26–37–

201(b)(3)(A) is inapplicable to this dispute because the land was certified to the Commissioner in 2004.[1] More specifically, Pulaski Choice argues that, "There is nothing in the statutory amendment that indicates that it should be applied retroactively to property already certified to the Commissioner of State Lands." In its reply brief, Pulaski Choice supports this assertion by stating, without citation to authority, that, "[s]ince the property becomes the property of the State of Arkansas at the time of certification, the law in effect at that time should control." This argument is without merit.

■ In *Jackson v. Sparks Regional Medical Center*, 375 Ark. 533, 538, 294 S.W.3d 1, 3–4 (2009), this court stated that

In determining legislative intent, we have observed a strict rule of construction against retroactive operation and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to operate prospectively only and not retroactively.

The parties do not dispute the presumption that the General Assembly intended that section 26–37–201(b)(3)(A) *operate* prospectively; the dispute is whether the circuit court erroneously *applied* section 26–37–201(b)(3)(A) retroactively. A statutory provision is prospectively applied when it is applied to the operative event specified by the statute, and the event occurred after the date the statute became effective. *See, e.g., Spires v. Russell*, 300 Ark. 530, 780 S.W.2d 547 (1989). Here, section 26–37–201(b)(3)(A) provides that the Commissioner's published notice of a tax sale must include the parcel number. This requirement became effective on August 12, 2005. *See supra*, note 1. The Commissioner published notice of the tax sale on April 26, 2006—after section 26–

37–201(b)(3)(A) became effective. Thus, the circuit court's application of section 26–37–201(b)(3)(A)'s publication requirements, as amended in 2005, to the 2006 notice of sale is a prospective application of the statute. The date of certification is irrelevant; it is not the operative event under section 26–37–201. *See, e.g., Spires, supra.*

Pulaski Choice's argument that it substantially complied with the publication requirements of section 26–37–201(b)(3)(A) is likewise without merit. Statutory publication provisions for the sale of tax-delinquent property require strict compliance. *See, e.g., Sanders v. Ryles*, 318 Ark. 418, 423, 885 S.W.2d 888, 891 (1994) ("In cases involving redemption of tax-delinquent lands, we have stated that strict compliance with the requirement of notice of the tax sales themselves is required before an owner can be deprived of his property.").

Finally, Pulaski Choice contends that section 26–37–201 is internally inconsistent as amended, stating:

While subsection (b)(3)(A) states that the publication should "[c]ontain the name of the owner, the legal description, and parcel number of the land," subsection (b)(3)(B) states that "[a] part of the abbreviated legal description shall be sufficient in the notice if the name of the owner and parcel number are listed." This implies that a parcel number is not always required in the publication. Therefore, the mere absence of the parcel number or an error in the parcel number does not always make the publication invalid.

The plain language of section 26–37–201(b) provides that a parcel number is one of five elements that the publication "shall" contain. Although section 26–37–

1. Act 1231 became effective on August 12, 2005, ninety days after the General Assembly adjourned from its regular session. *See* Op. Ark. Att'y Gen. No. 110 (2005).

201(b)(3)(B) states that an "abbreviated legal description" is "sufficient if the name of the owner and parcel number are listed," there is nothing in the plain language of the statute that provides that a parcel number may be omitted; instead, an *abbreviated legal description* is permitted *if* the notice contains both the name of the owner and the *parcel number*. Here, the notice did not contain the correct parcel number, and thus, the publication failed to meet the mandatory requirements of a valid notice under section 26–37–201(b)(3)(A).

Additionally, Pulaski Choice mistakenly relies on *Payton v. Blake,* 362 Ark. 538, 210 S.W.3d 74 (2005) to assert that the incorrect parcel number was inconsequential. In *Payton,* we held that an abbreviated legal description was not rendered valid by the inclusion of a parcel number in the published notice. *Payton,* however, was decided prior to the 2005 amendment allowing an abbreviated legal description if a published notice contains the parcel number and owner's name. Act of March 24, 2005, No. 1231, § 3, 2005 Ark. Acts 3794. |₇*Payton* does not stand for the proposition that a parcel number in a published notice of a tax sale is inconsequential. As noted above, statutory-notice provisions involving the sale of tax-delinquent land require strict compliance.

■ Accordingly, the date of certification of tax-delinquent land to the Commissioner is irrelevant to the required publication provisions of section 26–37–201(b)(3)(A); the 2005 amendment to section 26–37–201, requiring inclusion of the parcel number, is to be applied prospectively to notices of tax sales published after the statute's effective date. Further, the notice provisions of section 26–37–201 for sale of tax-delinquent property by the Commissioner require strict compliance. Having answered the questions of statutory interpretation certified to this court from the court of appeals, the appeal is remanded to the court of appeals.

Certified questions answered; remanded to the court of appeals.

HANNAH, C.J., and WILLS, J., concur.

HANNAH, C.J., concurring.

I agree with the majority's answers to the "certified questions" presented to us by the court of appeals. I also agree with Justice Wills's conclusion that this court should retain and decide the entire case in the present matter. However, I write separately to explain my analysis. Under this court's general superintending control over all courts of the state, we have historically answered and reassigned to the court of appeals cases certified to us by that court where we could answer a preliminary or procedural question|₈that did not materially affect the issues on appeal. *See Dugal Logging, Inc. v. Ark. Pulpwood Co., Inc.,* 336 Ark. 55, 59, 984 S.W.2d 410, 412 (1999) ("For the reasons above, we deny Riverwood's motion to dismiss, and reassign this case to the court of appeals to decide the remaining issues."). Where a preliminary or procedural issue is presented that must be decided by this court, and where the remaining issues are not significantly affected by this court's decision, the remaining issues should be returned to the court of appeals to hear those issues under their jurisdiction set out in Arkansas Supreme Court Rule 1–2 ("All cases appealed shall be filed in the Court of Appeals except that the following cases shall be filed in the Supreme Court.").

However, under our superintending control, I would make an exception on reassignment of cases to the court of appeals where, even though the issues may lie solely within its purview under Arkansas Supreme Court Rule 1–2, equity and jus-

tice require that a decision be made immediately—for example, in the case of child custody or termination of parental rights. Nonetheless, in the present case, as Justice Wills concludes, "our resolution of the certified questions here may not dispose of the remaining issues on appeal, and those issues are not squarely or solely within the purview of the court of appeals.". Therefore, I likewise conclude that judicial efficiency is not accomplished by reassignment of this case.

WILLS, J., concurring.

I agree completely with the substance of the answers provided by the majority to the "certified questions" presented to us by the court of appeals. I write separately, however, because I do not believe our rules or our case law contemplate this court's acceptance of "certified questions" from the court of appeals under the circumstances of this case. Accordingly, I would treat this case as a certification and acceptance of the entire case—not just as an acceptance of three certified questions. Judicial efficiency is not served by this court answering questions on the merits for the court of appeals, and then remanding the case back for it to discuss those same issues of substantive law in its disposition of the merits. I therefore concur in the answers to the certified questions.

We accept cases certified from the court of appeals under Ark. Sup.Ct. R. 1–2(d), which provides in pertinent part as follows:

(d) Transfer and certification. The Supreme Court may transfer to the Court of Appeals any case appealed to the Supreme Court and may transfer to the Supreme Court any case appealed to the Court of Appeals. If the Court of Appeals seeks to transfer a case, the Court of Appeals shall find and certify that the case: (1) is excepted from its jurisdiction

by Rule 1–2(a), or (2) otherwise involves an issue of significant public interest or a legal principle of major importance. The Supreme Court may accept for its docket cases so certified or may remand any of them to the Court of Appeals for decision.

Rule 1–2(d) does not expressly authorize the court of appeals to certify—or this court to accept—"certified questions." Although Ark. Sup.Ct. R. 6–8(a)(1) authorizes this court, in its discretion, to answer "questions of law certified to it by order of a federal court of the United States," the rule does not provide that the court of appeals may similarly submit certified questions to this court.

We have, in certain circumstances, answered questions certified by the court of appeals, or addressed one issue in a case certified by the court of appeals, and then remanded the case back to that court, rather than accepting certification of or disposing of the entire case. A review of these cases, however, reveals that the questions addressed in those cases involved preliminary, procedural, or jurisdictional questions that required resolution prior to the court of appeals's determination of the merits of the appeal. *See, e.g., Johnson v. State,* 2010 Ark. 63, 2010 WL 1006439 (whether appeal was proper after a guilty plea where separate sentencing hearing was held before the court and not a jury); *Hood v. State,* 2010 Ark. 62, 2010 WL 502966 (same); *Hagen v. State,* 2010 Ark. 54, 2010 WL 395975 (whether an oral motion to withdraw guilty plea made after sentence was announced but prior to entry of judgment was effective to give trial court jurisdiction); *Sartin v. State,* 2010 Ark. 16, 362 S.W.3d 877 (whether rebriefing was required on a no-merit brief); *Edwards v. Edwards,* 2009 Ark. 580, 357 S.W.3d 445 (whether trial court had jurisdiction to enter supplemental divorce de-

cree); *Duncan v. Duncan,* 2009 Ark. 565, 2009 WL 3786850 (whether scrivener's error in notice of appeal deprived appellate court of jurisdiction); *West v. Dep't of Human Servs.,* 373 Ark. 100, 281 S.W.3d 733 (2008) (whether a final, appealable order existed); *Whitmer v. Sullivent,* 373 Ark. 327, 284 S.W.3d 6 (2008) (whether attorney should be disqualified); *Myers v. Yingling,* 369 Ark. 87, 251 S.W.3d 287 (2007) (whether filing of notice of appeal deprives a circuit court from further power to issue orders); *Larry v. Grady,* 362 Ark. 65, 207 S.W.3d 451 (2005) (whether notice of appeal was timely); *D'Arbonne Constr. Co. v. Foster,* 348 Ark. 375, 72 S.W.3d 862 (2002) (whether judgment was a final appealable order without dismissal of "John Doe" defendants).

Arguably, the only arguably merits-based determination in the cases cited above was the decision in *Whitmer v. Sullivent, supra.* There, the issue was whether the attorney for a father in a child-custody matter should have been disqualified upon motion of the mother because the attorney was also a prosecuting attorney. The mother filed for an order of protection against her new husband, stating in her affidavit that she was "afraid he is going to kill me and hurt my children." The father filed an ex parte petition for temporary custody and attached a copy of the mother's affidavit. The trial court granted the father's *ex parte* petition the same day. The mother then moved to disqualify the father's attorney. The trial court denied her motion to disqualify and ultimately granted the father's petition to change custody. The court of appeals certified the case to this court under Ark. Sup.Ct. R. 1–2(a)(5) as an issue involving discipline of attorneys and under the Supreme Court's power to regulate the practice of law. The specific question presented to this court was whether the trial court abused its discretion by refusing to disqualify the father's attorney. We held that there was no abuse of discretion, because the prosecutor represented the entirety of his judicial district—not the mother individually—and also because he took proper steps to remove the appearance of a conflict, including appointing a special prosecutor.

Although our resolution of the question presented in *Whitmer* involved a substantive question of law, it is clear to me that it was a preliminary question, within the jurisdiction of this court, preceding the merits of the change-of-custody issue—an issue within the jurisdiction of the court of appeals. If this court had determined that disqualification was warranted and reversal was therefore appropriate on that basis, there would have been no need for the court of appeals to reach the merits of the change-of-custody issue. Judicial efficiency was thus served by resolution of the disqualification issue by this court, prior to the court of appeals's consideration of the merits of the change of custody issue.

The same cannot be said in the instant case. There are two issues in this appeal: (1) whether the trial court erred by setting aside the previous quiet-title decree, and (2) whether summary judgment was properly granted for Villa Creek in the quiet-title action. The certified questions addressed in the majority opinion are mainly relevant to the second issue, whether summary judgment was properly granted. Upon remand, the court of appeals will also have to address the first issue, the setting aside of the prior decree—a question that may also involve interpretation of our rules or of applicable statutes. Unlike *Whitmer* and the other cases cited above, our resolution of the certified questions here may not dispose of the remaining issues on appeal, and those issues are not squarely or solely within the purview of the court of appeals. *See* Ark. Sup.Ct. R.

1–2(b)(6) (In reassigning cases from the court of appeals to this court, we may consider whether the appeal involves a substantial question of law concerning the interpretation of an act of the General Assembly, or a court rule.). I fail to see how any real judicial efficiency is effected by our mere resolution of the certified questions in this case. Although I agree with the answers to those questions, I would accept certification of the entire appeal and dispose of the case. I therefore concur.