The Honorable Eddie Cooper State Representative Post Office Box 1 Melbourne, Arkansas 72556-0001
Dear Representative Cooper:
This is in response to questions you asked "on behalf of Day Spring Behavioral Health Services of Arkansas," as follows:
 1. Under the Arkansas Code of Judicial Conduct or other applicable statute, rule, or regulation, is it legal for a circuit judge to manage or direct staff who are providing contract services (including education, community based youth services, foster homes, etc.) to a state agency? If it is legal, is it also legal for a presiding circuit judge to sentence youth to those contract services?
 2. Is a circuit judge who manages or directs staff who are providing contract services to a state agency holding a "position of management" as defined under A.C.A. § 19-11-701 et seq.? If yes, does holding such a position violate A.C.A. § 19-11-701 et seq. or any other applicable statute, rule, or regulation?
 3. Does a financial conflict of interest that violates applicable state or federal law arise when a circuit judge sentences juveniles to services offered by a facility operated by the county for which the judge serves?
RESPONSE
I respectfully decline, for the reasons set forth below, to render any opinion on your first question. In my opinion, a state employee who "manages . . . staff" with *Page 2 
respect to a "business" likely holds a "position of management" for purposes of the definition of "financial interest" in A.C.A. § 19-11-701(9) (Repl. 2007); merely holding such a position of management does not, in and of itself, violate any provision of A.C.A. § 19-11-701 to-717 (Repl. 2002, Supp. 2009); and there is no significant financial conflict of interest in a circuit judge's placement of a juvenile in a county facility.
Question 1 — Under the Arkansas Code of Judicial Conduct orother applicable statute, rule, or regulation, is it legal for acircuit judge to manage or direct staff who are providing contractservices (including education, community based youth services,foster homes, etc) to a state agency? If it is legal, is it alsolegal for a presiding circuit judge to sentence youth to thosecontract services?
These questions generally concern whether the described actions would involve or constitute judicial misconduct.
The voters of the state adopted Amendment 66 in 1988. It provides for a Judicial Discipline and Disability Commission, which "may initiate, and shall receive and investigate . . . complaintsconcerning misconduct of all justices and judges. . . ." Ark. Const. amend. 66(b) (emphasis added). The Commission may impose milder sanctions itself and may recommend harsher sanctions to the Supreme Court. Ark. Const. amend. 66(c).
Act 637 of 1989, codified as amended at A.C.A. §§ 16-10-401 to-411 (Repl. 2010), is enabling legislation for Amendment 66. It requires the Commission to "initiate or . . . receive information, conduct investigations and hearings, and make recommendations to the Supreme Court concerning . . . [a]llegations of judicial misconduct. . . ." A.C.A. § 16-10-404(a)(1).
The Supreme Court has adopted Rules of Procedure of the Arkansas Judicial Discipline and Disability Commission, which require the Commission director, among other things, to "[c]onsider information from any source and receive allegations and complaints," "[m]ake preliminary evaluations," and "[c]onduct investigations." Rule 5. In addition, "[t]he Commission shall administer the *Page 3 
judicial discipline . . . system" and "have jurisdiction over any `judge'[1] regarding allegations of misconduct. . . ." Rule 6 (emphasis added).
Finally, the Commission appoints the Judicial Ethics Advisory Committee, which exists "to give advisory opinions to elected officials, judicial officers and candidates for judicial office seeking opinions concerning the compliance of an intended, future course of conduct with the Arkansas Code of Judicial Conduct." Arkansas Supreme Court Procedural Rules for the Arkansas Judicial Ethics Advisory Committee, Rule 1.
In my view, Amendment 66, the statutes, and the court rules provide a fairly comprehensive scheme of judicial branch self-regulation.[2] If the questioned conduct is prospective only, an eligible person may obtain an advisory opinion from the Committee, a body formed for the express purpose of considering these questions and comprised of people — two retired judges and one lawyer — who have relevant experience and, in all probability, considerable expertise in assessing judicial conduct. As I stated earlier in a similar situation, the Committee "is the proper entity to opine on [proposed conduct's] compliance with the Code of Judicial Conduct." Op. Att'y Gen. 2008-045.
If the questioned judicial conduct is past or ongoing, any person may complain to the Commission and thereby cause an investigation by a judicial branch body that has constitutional jurisdiction to act on its findings and is comprised, like the Committee it appoints, of people with presumed relevant experience and expertise.
Question 2 — Is a circuit judge who manages or directs staffwho are providing contract services to a state agency holding a"position of management" as defined under A.C.A. § 19-11-701 etseq.? If yes, does holding such a positionviolate A.C.A. § 19-11-701 et seq. or any other applicable statute,rule, or regulation? *Page 4 
A state statute imposing ethics rules on state employees uses the term "position of management" in its definition of the term "financial interest." A.C.A. § 19-11-701(9)(C) (Repl. 2007). Contrary to your assertion, however, no Arkansas statute defines the term "position of management."
We use well-established rules to determine the meanings of words used in statutes, even in the absence of definitions:
 [T]he fundamental rule of statutory construction is to give effect to the intent of the legislature. See, e.g., Citifinancial Mortgage Co., Inc. v. Matthews, 372 Ark. 167, 271 S.W.3d 501 (2008). In the absence of ambiguity, legislative intent is determined from the ordinary and usually accepted meanings of the language used. See id. If a statute is clear and unambiguous, it is given its plain meaning, without further search for legislative intent. See, e.g., City of Ft. Smith v. Carter, 372 Ark. 93, 270 S.W.3d 822 (2008). In such a case, there is "no need to resort to rules of statutory construction." Jones v. Double "D" Properties, Inc., 352 Ark. 39, 46, 98 S.W.3d 405 (2003).
Op. Att'y Gen. 2009-168 (footnote omitted).
In my opinion, giving the statutory language its plain meaning, a person who manages another person in connection with a "business" is in a "position of management" as that phrase is used in A.C.A. § 19-11-701(9)(C). Your question indicates that the judge "manages . . . staff," and I take that assertion as fact for purposes of this question. I also assume that the management is in connection with a "business," as the statute contemplates.
As noted above, the holding of a position of management in a business is one way in which a state employee is deemed to have a "financial interest" in that business. See
A.C.A. § 19-11-701(9).
In my opinion, a state employee who merely holds a position of management with respect to a business, and who thereby is deemed to have a financial interest in that business, does not, without more, violate any part of A.C.A. §§ 19-11-701 to-717 (Repl. 2007, Supp. 2009), or any other law of which I am aware. The ethics law *Page 5 
prohibits a state employee from participating in a proceeding relating to a contract or subcontract if the employee has a financial interest in the contract directly, or indirectly via a financial interest in a business having a financial interest in the contract. A.C.A. § 19-11-705(a)(1) (Repl. 2007). It also requires employees to disclose benefits they receive under state contracts with businesses in which they have financial interests. A.C.A. § 19-11-706(a) (Repl. 2007). But the ethics law does not prohibit the mere holding of a position of management or the resulting existence of a financial interest as defined.
Question 3 — Does a financial conflict of interestthat violates applicable state or federal law arise when a circuitjudge sentences juveniles to services offered by a facility operatedby the county for which the judge serves?
Circuit judges' salaries are uniform throughout the state.See Ark. Const. amend. 80, § 16(E). They are officers of judicial districts, some of which are composed of a single county, but which more commonly are multi-county territories. Seegenerally A.C.A. §§ 16-13-901 to-3201 (Repl. 2010). They are paid from the state's Constitutional Officers Fund. See, e.g.,Act 3 of 2011, § 1; Act 3 of 2009, § 1. I conclude that circuit judges are state, not county, employees. SeeVenhaus v. State, 285 Ark. 23, 684 S.W.2d 252 (1985); Op. Att'y Gen. 2008-063.
A circuit judge, being a state employee, cannot be said, without more, to have a significant interest in a county's finances. In my opinion, then, there is no unlawful financial conflict of interest in a circuit judge's placement of juveniles in a facility operated by a county, even the county in which the judge normally sits.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:JMB/cyh
[1] A circuit judge is clearly a "judge" as defined in the rules.See Rule 6(C).
[2] Amendment 66 was adopted "[u]nder the judicial power of the State. . . ." Ark. Const. amend. 66(a). *Page 1