Mr. Dan Flowers Director of Highways and Transportation Arkansas State Highway Department P.O. Box 2261 Little Rock, Arkansas 72203-2261
Dear Mr. Flowers:
I am writing in response to your request for an opinion concerning Act 2262 of 2005, which is entitled "An Act to Prohibit the Hiring of Relatives by Public Officials; to Prohibit a State Agency Employee from Supervising a Relative; To Impose Civil and Criminal Penalties for Violations; and For Other Purposes" (now codified at A.C.A. §§ 25-16-1001 to -1007 (Supp. 2005)). Your questions revolve around two distinct provisions of this law. You first reference A.C.A. § 25-16-1007, which, as codified, states that "[t]his subchapter shall not apply to the hiring, transfer, or promotion of any person employed by a state agency as of August 12, 2005." You next refer to A.C.A.25-16-1002(b), which provides that "[w]ithin each state agency, no employees who are related shall be placed within the same direct line of supervision whereby one (1) relative is a supervisory employee and responsible for supervising the job performance or work activities of another relative." You pose two questions regarding these provisions, as follows:
 1. Does A.C.A. § 25-16-1007 exempt Departmental employees who were employed prior to the effective date of the Act from all requirements of the Act during their remaining employment? Asked another way, are Department employees who were hired prior to August 12, 2005, exempt from the Act's requirements relating to transfers or promotions occurring thereafter?
 2. What is the meaning of the phrase "within the direct line of supervision" as set forth in A.C.A. § 25-16-1002(b)? Based upon the following scenario, please identify the individual(s) within the "direct line of supervision" of Truck Driver.
 Scenario:
 Truck Driver is on a repair crew in Pulaski County and holds the lowest graded position on the crew. Crew Leader is Truck Driver's supervisor but is responsible for the supervision of more than one repair crew. When Crew Leader is unavailable, Maintenance Aide is the highest graded position that possesses temporary supervisory authority in absence of Crew Leader. Crew Leader dispatches crews and supervises workers as directed by Area Supervisor. Area Supervisor is supervised by Maintenance Engineer, who in turn works under and takes direction from District Engineer. All district engineers report to Operations Engineer who reports to Chief Engineer who reports to Director. While Crew Leader, Maintenance Supervisor, Maintenance Engineer, and District Engineer may recommend Truck Driver's transfer, suspension, layoff, recall, promotion, discharge, or discipline, Maintenance Aide may only assign Truck Driver a task while Crew Leader is unavailable. Further, no recommended action may occur to Truck Driver unless HR Manager has reviewed the proposed action and District Engineer, HR Manager, Assistant Director, Chief Engineer, and Director indicate their separate written approval. Of Maintenance Aide, Crew Leader, Maintenance Supervisor, Maintenance Engineer, District Engineer, HR Manager, Chief Engineer, and Director please identify each person within the direct line of supervision, within the meaning of Act 2262 of 2005, of Truck Driver.
RESPONSE
It is my opinion that the answer to your first question is "no." In response to your second question, § 25-16-1001(5) defines "supervisory employee." That definition, along with the rules or policies adopted by the Office of Personnel Management of the Division of Management Services of the Department of Finance and Administration, will control your second question. With regard to individual factual determinations concerning the "direct line of supervision" of a truck driver, that type of factual determination is not appropriate for resolution in an Attorney General's opinion. I am not empowered as fact-finder in the issuance of such opinions. Consultation with the Office of Personnel Management is advisable on this question.
Question 1 — Does A.C.A. § 25-16-1007 exempt Departmentalemployees who were employed prior to the effective date of theAct from all requirements of the Act during their remainingemployment? Asked another way, are Department employees who werehired prior to August 12, 2005, exempt from the Act'srequirements relating to transfers or promotions occurringthereafter?
In my opinion the answer to this question is "no." Act 2262 contains what is commonly referred to as a "grandfather clause." This type of clause is defined as a "provision in a new law or regulation exempting those already in or a part of the existing system which is being regulated. An exception to a restriction that allows all those already doing something to continue doing it even if they would be stopped by the new restriction."Black's Law Dictionary, (5th Ed. 1979) at 629. In addition, the Arkansas Supreme Court has stated that: "[w]e have continuously upheld the legitimacy of grandfather clauses and the policy behind them. See, e.g., Kittler v. State, 304 Ark. 344,802 S.W.2d 925 (1991). Legislators have the right to make distinctions in their enactments between existing rights and conditions and those that may come into existence in the future, when there is a rational basis for that distinction." ArkansasActivities Association, v. Meyer, 304 Ark. 718, 724,805 S.W.2d 58 (1991), citing Valley Bank v. State, 335 A.2d 652 (N.H. 1975).
Your question focuses on the scope and meaning of the grandfather clause in Act 2262. The original language of Act 2262 provides that "[t]his subchapter shall not apply to the hiring, transfer, or promotion of any person employed in a state agency as of the effective date of this act."[1] Your question, in essence, is whether the exemption for the "hiring, transfer, or promotion" of any person "employed in a state agency" as of the effective date, exempts only hirings, transfers or promotionsoccurring before the effective date of the act (previous hirings, transfers or promotions), or whether it also exempts anyfuture hirings, transfers or promotions of persons employed by state agencies on August 12, 2005. The former interpretation would permit anyone already employed in violation of the act's provisions on the effective date to retain their position. The latter interpretation would go much further and grant what would amount to a career-long exclusion from the Act's prohibitions for all state employees employed by state agencies on August 12, 2005.
The question is one of statutory construction. The cardinal rule of statutory construction is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760, 765,68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing Statev. Havens, 337 Ark. 161, 987 S.W.2d 686 (1999)). A statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v. State,347 Ark. 364, 64 S.W.3d 706 (2002). Each section is read in light of every other section, and the object and purposes of the legislation are to be considered. Chism v. Phelps,228 Ark. 936, 311 S.W.2d 297 (1958). Nothing is taken as intended that is not clearly expressed. State ex rel. Sargent v. Lewis,335 Ark. 188, 979 S.W.2d 894 (1998).
In addition, with respect to the interpretation of grandfather clauses, it has been stated that:
 Statutory limitations, like the one at issue in this case . . . are variously termed "grandfather clauses," "saving clauses," "exemptions," and "provisos." Attempts have been made to draw fine distinctions among these expressions. However, courts and legislators seldom rigorously differentiate these terms. See 1A Norman J. Singer, Statutes and Statutory Construction § 20.22 (5th ed. 1993) (stating that neither courts nor statutory drafters make consistent distinctions in defining these words).
 * * *
 The intent of grandfather clauses is to save something that would otherwise be lost. Bass v. Albright, 59 S.W.2d 891, 894 (Tex.Civ.App. 1933, no writ). These laws do not usually create rights or requirements, but rather prevent an entity from being altered or imposed upon by a new statute. Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 162, 40 S.Ct. 438, 64 L.Ed. 834 (1920) (stating that "[t]he usual function of a saving clause is to preserve something from immediate interference — not to create"). A grandfather clause preserves something old, while the remainder of the law of which it is a part institutes something new.
 * * *
 Generally, in resolving statutory ambiguities, courts will favor a general provision over an exception. See State v. Christensen, 18 Wash.2d 7, 137 P.2d 512, 518 (1943). This is especially true when a statute promotes the public welfare. Wheeler v. Wheeler, 134 Ill. 522, 25 N.E. 588, 590 (1890) ("It is familiar that if the words employed are susceptible of two meanings, that will be adopted which comports with the general public policy of the state, as manifested by its legislation, rather than that which runs counter to such policy."). Because of this judicial predilection, strict or narrow construction is usually applied to exceptions to the general operation of a law. State ex rel. Murtagh v. Department of City Civil Serv., 215 La. 1007, 42 So.2d 65, 73-74 (1949). For this reason, a grandfather clause will be construed to include no case not clearly within the purpose, letter, or express terms, of the clause. See United States v. McElvain, 272 U.S. 633, 639, 47 S.Ct. 219, 71 L.Ed. 451 (1926) (A proviso" is to be construed strictly, and held to apply only to cases shown to be clearly within its purpose."); United States v. Dickson,
40 U.S. (15 Pet.) 141, 165, 10 L.Ed. 689 (1841) (Those who claim their case falls within the exceptions created by a statutory proviso" must establish it as being within the words as well as within the reasons thereof."). "In interpreting the exceptions to the generality of the grant, courts include only those circumstances which are within the words and reason of the exception." Dalehite v. United States, 346 U.S. 15, 31, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). When the scope of a grandfather clause is ambiguous, the court will construe it strictly against the party who seeks to come within its exception. Teague v. Campbell County, 920 S.W.2d 219, 221 (Tenn.Ct.App. 1995).
Regents of the University of New Mexico v. New MexicoFederation of Teachers, 125 N.M 401, 962 P.2d 1236, 1244-1245
(1998). See also Towson v. Denson, 74 Ark. 302, 86 S.W. 661
(1905) (provisos strictly construed); and McRae v. Holcomb,46 Ark. 306 (1885) (provisos are strictly construed and take no case out of the enacting clause which does not fall fairly within its terms or the words and reason thereof).
In my opinion the answer to your first question is "no," the grandfather clause cannot be construed to exempt Highway Department employees who were employed prior to the effective date from "all requirements of the Act during their remaining employment." This result is compelled by the required strict construction of the grandfather clause and in light of the apparent legislative intent.
It might be argued that the language of the grandfather clause is unambiguous in exempting the future hiring, transfer, or promotion of any state agency employee as of August 12, 2005 from the subchapter. In my opinion, however, the language of the grandfather clause is ambiguous. It is unclear whether the clause "as of the effective date of this act" refers back only to the date of employment, or also to the "hiring, transfer, or promotion" at issue. In this regard, it is unclear under the language used whether the act exempts only the "hiring, transfer or promotion" of existing state agency employees occurring prior to the Act's effective date or also to the "hiring, transfer or promotion" of existing state agency employees occurring after the effective date. The former interpretation is the narrower, and would preserve the status quo by allowing state agency employees serving in violation of the Act's provisions on the effective date to retain their positions. As noted above, this is the primary and usual effect of a grandfather clause. The latter interpretation is a broader reading, which would entitle all persons employed by state agencies on the effective date, whether or not in violation of the Act's provisions, to a career-long exemption from the Act's prohibitions. This reading would prospectively authorize a public official to appoint or employ a close relative so long as the relative was employed by some state agency, in some capacity, on the effective date of Act 2262.
When a statute is ambiguous, courts look to the language of the statute, its subject matter, the object to be accomplished by the statute, the purpose to be served, and other appropriate matters.Mack v. Brazil, Adlong Winningham, PLC, 357 Ark. 1,159 S.W.3d 291 (2004). I cannot conclude that the latter interpretation was intended by the General Assembly or that it is within the purpose of the provision. As noted above, "grandfather clauses" generally authorize the continuance of "existing rights and conditions" (see Arkansas Activities Association v. Meyer,supra), and allow "those already doing something to continue doing it . . ." Black's Law Dictionary, supra. To read the provision as your first question suggests would allow the affirmative transgression of the Act's provisions by an entire class of people (state employees as of August 12, 2005), who were not in violation of the Act on the effective date.
In addition, a review of other provisions of the Act negates this broader construction. It has been stated that in determining legislative intent, the Supreme Court looks to the language of the whole act. State v. Morgan, (Ark.Sup.Ct. No. 05-7, December 8, 2005); Arkansas Department of Economic Developmentv. Clinton, (Ark.Sup.Ct. 05-104, October 27, 2005); andCentral Southern Companies Inc. v. Weiss, 339 Ark. 76,823 S.W.3d 294 (1999). Section 25-16-1003 of the Arkansas Code (which you have not referenced), addresses the resolution of violations occurring as a result of marriages occurring after August 12, 2005. This section states that such violations shall be resolved by: 1) transferring one of the employees to another position within the state agency; 2) transferring one of the employees to another state agency; or 3) the resignation of one of the employees. This section is not limited to post-August 12, 2005 employees and if the broader construction of the grandfather clause is accepted, a question arises as to why this section would be necessary if both of the newlyweds were employed by state agencies on the effective date of Act 2262. Why, if both of them possess a career-long exemption from the provisions of the Act, would this provision be necessary as to them? In my opinion this issue sheds light on the legislative intent and indicates that the "grandfather clause" was not intended to have the broader effect suggested in your first question.
In my opinion, therefore, in light of the strict construction required and the apparent legislative intent when the Act's provisions are read as a whole, the answer to your first question is "no."
Question 2 — What is the meaning of the phrase "within thedirect line of supervision" as set forth in A.C.A. §25-16-1002(b)? Based upon the following scenario, please identifythe individual(s) within the "direct line of supervision" ofTruck Driver.
The phrase "direct line of supervision" is not defined in the applicable subchapter. I and my predecessors have previously noted the Attorney General's lack of authority to supply a definition of a term that the legislature has not defined. Ops. Att'y. Gen. 2005-020; and 2000-338, at 2, quoting Op. Att'y. Gen. 1998-025 ("[t]his office has consistently taken the position that in the absence of a legislatively- or judicially-formulated definition, it is inappropriate for the Attorney General, being a member of the executive branch of government, to formulate a controlling definition.")
I will note, however, that the provision about which you have inquired (A.C.A. § 25-16-1002(b), itself indicates the scope of the clause at issue. Subsection (b) states that: "[w]ithin each state agency, no employees who are related shall be placed within the same direct line of supervision whereby one (1) relative isa supervisory employee and responsible for supervising the jobperformance or work activities of another relative." (Emphasis added). The emphasized language above elaborates on the phrase "direct line of supervision" by prohibiting a relative from being a "supervisory employee" and supervising the job performance or work activities of another relative. The term "supervisory employee" is a defined term under the Act. Section 25-16-1001 (5) defines "supervisory employee" as "any individual having: (A) Authority in the interest of the state agency to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees of a state agency; or (B) The responsibility to direct other employees of a state agency, to adjust their grievances, or to effectively recommend an action if the exercise of authority is not of a merely routine or clerical nature but requires the use of independent judgment."
In addition, the Policy and Procedure Manual of the Office of Personnel Management at the Department of Finance and Administration addresses the subject of your question by stating the following:
 Within each state agency, no relatives of employees shall be placed within the same line of supervision whereby one relative is in a supervisory position over the other. A temporary change in supervision resulting in the supervision of a relative will not be considered a violation of A.C.A. 25-16-1001
provided the supervision does not exceed 30 days. No hiring, firing, pay adjustments or other personnel actions may occur during this temporary period of supervision.
Office of Personnel Management, Policy and Procedure Manual, § 111.1.2 (available at www.arkansas.gov/dfa ("State Employee Services"), ("Current Employee Information"), ("Policy and Procedures Manual"), (last visited February 17th, 2005).
The Office of Personnel Management is charged by the Act with establishing rules and forms to administer the subchapter. A.C.A. § 25-16-1006 (Supp. 2005). In the issuance of official Attorney General opinions, however, I am not empowered as a fact-finder. Questions regarding the application of the Act to individual fact patterns or "scenarios" should therefore be addressed by the Department's counsel, with the aid of the Office of Personnel Management.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE, Attorney General
MB:ECW/cyh
[1] The Arkansas Code Revision Commission changed the language "the effective date of this act" to "August 12, 2005," which is the actual effective date. See Op. Att'y. Gen. 2005-110 (acts passed at the 85th General Assembly with no specified effective date or emergency clause become effective August 12, 2005).