Juanita MACK and Fred Goss *v.* BRAZIL, ADLONG
& WINNINGHAM, PLC

03-900                                                      159 S.W.3d 291

Supreme Court of Arkansas
Opinion delivered April 15, 2004

*McMath Woods P.A.*, by: *Charles D. Harrison*, for appellants.

*Brazil Adlong & Winningham, PLC*, by: *Matthew W. Adlong*, for appellee.

BETTY C. DICKEY, Chief Justice. This appeal arises from a dispute between the appellants, Junita Mack and Frederick Goss, and the appellee law firm of Brazil, Adlong & Winningham, P.L.C. Ms. Mack signed a contingency-fee contract with the Brazil

law firm to represent her in a personal injury suit. After discharging the law firm without cause, Ms. Mack hired Frederick Goss as her new attorney. The law firm attempted to perfect an attorney's lien against any settlement or judgment obtained by Ms. Mack in her lawsuit. When Ms. Mack and Mr. Goss settled the lawsuit with the tortfeasors for $100,000.00, the Brazil law firm was not paid its contract amount of twenty-five percent of the settlement. The law firm sued Ms. Mack and Mr. Goss on the contract, asserting its attorney lien and asking for $25,000.00 in damages. The trial court found that law firm substantially complied with the attorney's lien statute, granted summary judgment in favor of the law firm in the amount of $25,000.00 against Ms. Mack, and ordered the tortfeasors' attorney to release that amount to the Brazil law firm.

Ms. Mack and Mr. Goss appeal, contending that the Brazil law firm did not perfect its attorney's lien, and therefore, is entitled only to *quantum meruit* instead of full contract damages. Because this case pertains to the power of the court to regulate the practice of law, jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(5). We affirm the trial court's order.

*Facts*

The facts in this case are uncontested. In early November of 1999, Appellant Junita Mack, a California resident, was involved in an accident with a truck owned by Pat Salmon & Sons and operated by Ester McNutt on Interstate 40 in Faulkner County, Arkansas. On November 15, 1999, Ms. Mack retained the law firm of Brazil, Adlong & Winningham, P.L.C. to represent her in a suit against Salmon & Sons and Ester McNutt. Under the terms of the contract, the law firm was to receive 25% of any settlement proceeds or judgment. On November 18, 1999, the law firm sent a letter to Marty Beckman, the adjustor for Pat Salmon & Sons advising that the law firm represented all of the occupants of the Mack vehicle involved in the accident. The letter was not signed by Ms. Mack nor any other accident victim, nor was it sent certified mail return receipt requested. Finally, the letter failed to mention any attorney's lien in any context.

The relationship between Ms. Mack and the law firm began to deteriorate soon after they signed the contract. Apparently, Ms. Mack, fearing that she was having internal hemorrhaging, asked the law firm to find her a medical doctor. The law firm replied that it could only find her a chiropractor. Later, Ms. Mack told one of the law firm's employees that she no longer wanted the law firm to

represent her, and on November 29, 1999, Ms. Mack requested the photos of the accident scene be returned to her.

On February 7, 2000, a letter from attorney Gerald Becker of Berkeley, California, advised the law firm that Ms. Mack had asked him to take over her claim against Salmon and McNutt. Becker requested that the law firm send him Ms. Mack's file. On February 21, 2000, the law firm responded by letter that it would not forward Ms. Mack's file without a signed release from her, and the law firm advised that it intended to fulfill the contract for legal services. On March 1, 2000, Ms. Mack sent a letter to the law firm officially terminating the law firm's representation of her and asked that her file be sent to attorney Becker. On March 10, 2000, the law firm sent letters to Becker and Salmon's adjustor, Beckman, regarding the transfer of Ms. Mack's claim to Becker. In these letters, the law firm stated, "our office retains a lien for legal services against any proceeds she may be entitled to." However, the March 10 letters were neither signed by Ms. Mack nor sent certified mail with return receipt requested.

On May 8, 2001, the law firm sent another letter to Beckman, copied to Becker, regarding the attorney's lien that it claimed. While a notation on the letter shows it was sent certified mail return receipt requested, the law firm did not furnish the court with a copy of an executed return receipt. Moreover, at this time, Ms. Mack was no longer represented by Becker; rather, she was represented by Appellant Goss. In June 2002, Goss obtained a $100,000 settlement in Ms. Mack's personal-injury claim against Salmon and McNutt.

Thereafter, correspondence between the appellants and the law firm ensued for almost a year-and-a-half. On September 26, 2002, the law firm sent a certified letter return receipt requested to Goss advising him of the law firm's assertion of an attorney's lien. This letter shows a copy was also sent to Salmon and McNutt's attorney, Brian Boyce. Unlike the May 8, 2001 letter, the law firm produced proof of actual delivery this time. However, in this instance, the only executed return receipt produced by the law firm was one from Goss. The law firm did not produce an executed copy of a return receipt from Boyce.

On October 10, 2002, the law firm filed suit against Ms. Mack and Goss in Faulkner County Circuit Court. The law firm filed a motion for summary judgment with respect to the validity of its asserted lien. The trial court found: 1) a valid contract existed between Ms. Mack and the Brazil Law Firm, and 2) the Brazil Law Firm had substantially complied with the attorney's lien statute;

therefore, under Arkansas law, the law firm had, in fact, established a valid attorney's lien. The trial court granted the motion for summary judgment and entered a judgment awarding $25,000 to the law firm. This appeal follows.

## Standard of Review

■ As a general rule, in reviewing the grant of a motion for summary judgment, the appellate court determines if summary judgment was appropriate based on whether the evidence presented in support of summary judgment leaves a material question of fact unanswered. The appellate court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Ultracuts Ltd. v. Wal-Mart Stores,* 343 Ark. 224, 33 S.W.3d 128 (2000).

■ However, the granting of this summary-judgment motion was based upon the trial court's interpretation of the Arkansas attorney's lien statutes. We review issues of statutory interpretation *de novo,* as it is for this court to decide what a statute means. *Fewell v. Pickens,* 346 Ark. 246, 57 S.W.3d 144 (2001); *Hodges v. Huckabee,* 338 Ark. 454, 995 S.W.2d 341(1999). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Harris v. City of Little Rock,* 344 Ark. 95, 40 S.W.3d 214 (2001); *Norman v. Norman,* 342 Ark. 493, 30 S.W.3d 83 (2000). Inasmuch as the sole issue on appeal herein is the propriety of the trial court's construction and application of Ark. Code Ann. § 16-22-301—308, the proper standard of review is *de novo.*

## Attorney's Lien

■■ In order to perfect an attorney's lien in Arkansas, an attorney must follow the procedure set out in Ark. Code Ann. § 16-22-304 as follows:

16-22-304. *Lien of attorney created.*

(a)(1) *From and after service upon the adverse party of a written notice signed by the client and by the attorney at law, solicitor, or counselor representing the client, which notice is to be served by certified mail and a return receipt being required to establish actual delivery of the notice,* the attorney at law, solicitor, or counselor serving the notice upon the adversary party shall have a lien upon his or her client's cause of

action, claim, or counterclaim, which attaches to any settlement, verdict, report, decision, judgment, or final order in his or her client's favor, and the proceeds thereof in whosoever's hands they may come.

(2) The lien cannot be defeated and impaired by any subsequent negotiation or compromise by any parties litigant.

(3) However, the lien shall apply only to the cause or causes of action specifically enumerated in the notice.

Ark. Code Ann. § 16-22-304 (Supp. 2003) (emphasis added). This court outlined our well-settled rules of statutory construction in *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002), wherein we stated:

The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Raley v. Wagner*, 346 Ark. 234, 57 S.W.3d 683(2001); *Dunklin v. Ramsay*, 328 Ark. 263, 944 S.W.2d 76(1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Stephens v. Arkansas Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397(2000); *Burcham v. City of Van Buren*, 330 Ark. 451,954 S.W.2d 266 (1997). Where the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Stephens, supra (citing State v. McLeod*, 318 Ark. 781,888 S.W.2d 639 (1994)). Finally, the ultimate rule of statutory construction is to give effect to the intent of the General Assembly. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999); *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998).

*Clayborn*, 348 Ark. 557, 75 S.W.3d 174. This court has held that strict compliance with the attorney's lien statute is not required and substantial compliance will suffice. *Metropolitan Life Ins. Co. v. Roberts*, 241 Ark. 994, 411 S.W.2d 299 (1967).

In *Roberts*, an attorney representing an insurance beneficiary wrote a letter to the insurance company asserting his lien. Even though the letter was not signed by the client, as required by the statute, we held that notice given substantially complied with the attorney's lien statute:

As we interpret the intent and purpose of the statute it was enacted to make sure (in this case) that *appellee represented Mrs. Henley* and

that *appellant would be aware of appellee's intention to claim a lien*, for his fee, on the proceeds of the litigation before they were paid to the client (Mrs. Henley). We hold that the notice here given by appellee was a substantial compliance with the above provision of the statute, under the undisputed facts as previously set out. *Here appellant was fully aware of appellee's claim before paying the money to Mrs. Henley.* This view is supported by language found in the emergency clause of Act No. 306 of 1941 (said act being 25-301), where it explains the reason for avoiding the "necessity of filing suit under existing laws in order to establish the lien of attorneys . . ." This Court has held that a statute of this kind should be *liberally construed St. Louis, Iron Mountain & Southern Railway Company v. Hays and Ward*, 128 Ark. 471 (p. 478), 195 S.W. 28; *Slayton v. Russ*, 205 Ark. 474 (p. 476), 169 S.W.2d 571, and *Whetstone v. Daniel*, 217 Ark. 899 (p. 901), 233 S.W.2d 625.

*Roberts*, 241 Ark. 994, 411 S.W.2d 299 (emphasis added).

■ The language of our current attorney's lien statute is essentially the same as the language of the original attorney's lien act cited in *Roberts* and thus should be liberally construed as well. The purpose of the attorney's lien statute is not to provide actual *delivery* of the notice of the attorney's lien; rather, its purpose is to ensure that the adverse party is aware of the attorney's intention to claim a lien on the proceeds of the litigation before the settlement is paid.

While the client in the instant case did not sign the letters asserting the alleged attorney's lien upon the adverse party, the law firm did attach copies of the contingency-fee contract signed by Ms. Mack when it sent letters to both Goss and Brian Boyce, the attorney representing the adverse parties, Salmon and McNutt. In its attempts to perfect its attorney's lien, the law firm sent several letters, but only two were sent certified mail as required by the statute, and neither completely complied with the statute. Nonetheless, the record shows that Brian Boyce, the adverse parties' attorney, sent a letter dated October 2, 2002, to Matthew Adlong of the Brazil Law Firm and Appellant Goss. In that letter, Boyce acknowledges the Brazil Law Firm's claim as follows:

Based upon my telephone conversation with Matt, it appears that he has no objection to my client attempting to comply with the settlement agreement as best it can at this point by issuing a check to Ms. Mack (and Ms. Mack only) for $40,000.00. This will leave $60,000.00 remaining in the settlement monies. This will cover the

aggregate of the 25% lien claimed under Matt's contract and the 1/3 fee claimed under Fred's, with a small cushion for expenses, etc.

■ Based on the October 2, 2002 letter from Brian Boyce, the adverse parties' attorney, there is no question that the adverse parties in the case at bar had actual notice of the asserted lien before any settlement money was paid to Ms. Mack. Because the adverse parties had actual notice of the asserted lien, the failure to produce an executed copy of a return receipt was not fatal. Accordingly, we hold that the law firm substantially complied with the attorney's lien statute, and thus perfected its attorney's lien. Therefore, the trial court did not err in finding that the Brazil Law Firm substantially complied with the statute, nor did it err in its order that the tortfeasors' attorney must release to the Brazil Law Firm $25,000 from the settlement.

Affirmed.

CORBIN, J., concurs.

DONALD L. CORBIN, Justice, concurring. I concur with the majority's conclusion that Appellee Brazil law firm substantially complied with the provisions of our attorney-lien law, Ark. Code Ann. §§ 16-22-301 to -304 (Repl. 1999 and Supp. 2003). I write separately because the resolution of this case, though legally sound, is unjust. The reality of this case is that Ms. Mack will wind up recovering roughly $40,000 of a $100,000 settlement. While these numbers in and of themselves may not offend notions of justice and fair play, they do so when they are coupled with the fact that $25,000 is being paid to a law firm that did little or no work on behalf of Ms. Mack.

Although I believe that the payment of this fee to the Brazil law firm does not violate the letter of the attorney-lien law, it certainly violates the spirit. I do not believe that the General Assembly ever intended for a discharged attorney to receive a windfall under a contingency-fee contract when he or she did little or nothing to secure the client's settlement. Rather, I believe that the law was enacted to protect an attorney in cases where the client attempts to settle around the attorney or where another attorney steals the client away from the first attorney. However, I doubt that the legislature wanted to protect an attorney who did nothing on behalf of a client, in a situation such as this, where the client simply chooses to go with another attorney. As it stands, the attorney-lien law is considerably broader than other statutory

liens, which ordinarily condition the entitlement to a lien on work performed, rather than the mere existence of a contract.

Having said that, I am aware that the legislature views the attorney-lien law rather liberally, as it has specifically stated that "an attorney should have the right to rely on his contract with his client; and that the Attorney's Lien Law should be reenacted to protect the contractual rights of attorneys." Ark. Code Ann. § 16-22-301 (Repl. 1999). Given this statement, I think the majority is correct in upholding Brazil's claim against the former client's settlement.

However, I cannot escape the reality of the injustice in this case. What really concerns me is that Ms. Mack was never told that the mere act of signing a contract obligated her to pay the full amount of the fee, *even if the law firm performed no work under the contract.* All she was informed of was that the contract provided a contingency fee of 25% "with lien retained by attorney and authority to withdraw fee from proceeds of settlement by judgment," and that:

> Client agrees that he will make no settlement except in the presence of the attorney and with his approval, and should the client do so in violation of this agreement, he agrees to pay attorney the sum and share above indicated or the reasonable value of attorney's services whichever may be greater.

Given the unfortunate facts and circumstances of this case, I urge the General Assembly to take another look at the attorney-lien law and consider amending it to require attorneys licensed to practice in this state to specifically disclose to the client that they may seek a lien for the full amount of the contingency-fee contract even if they do no work on behalf of the client. They should be required to do this in layman's terms, not legalese. They should specifically tell clients up front that the mere act of signing the contract, even if they discharge the attorney prior to any work being done, renders them responsible for paying the full contract fee in the event they get a settlement or judgment in their favor.

Alternatively, I would urge the legislature to consider requiring at least a modicum of work before the attorney is entitled to a lien on the full amount of the contract fee. As far as I can tell, under the current attorney-lien law, an attorney is not required to show anything other than the existence of a contract and a settlement or compromise by the client to be entitled to a lien. This is in contrast to mechanics or materialmen, who must first supply labor, services, material, etc., before they are entitled to a

lien. *See* Ark. Code Ann. § 18-44-101 (Repl. 2003). The mere existence of a contract for labor, services, materials, etc., is not sufficient to obtain a lien; they must actually perform under the contract. It is unclear to me why attorneys should be entitled to more protection than other professionals. Surely, the General Assembly could achieve its goal of protecting attorneys' rights while simultaneously protecting the rights of their clients.