Richard MAYS, Trustee, In His Official Capacity; and The Yedea Trust *v.* ST. PAT PROPERTIES, LLC; and Charlie Daniels, State Land Commissioner

03-798                                    182 S.W.3d 84

Supreme Court of Arkansas
Opinion delivered May 20, 2004

*Bowden & Smith,* by: *David O. Bowden* and *Steven R. Smith,* for appellants.

*Carol L. Lincoln,* for appellee Land Commissioner; and *Montgomery, Adams & Wyatt,* by: *Orin Eddy Montgomery,* for appellees.

RAY THORNTON, Justice. This appeal involves the validity of a sale of tax-delinquent land. Appellant, Richard Mays, trustee for the Yedea Trust, appeals a judgment of quiet title entered by the Pulaski County Circuit Court in favor of appellees, St. Pat's Properties, LLC, and Charlie Daniels, the Commissioner of State Lands ("Commissioner"). On appeal, appellant makes three allegations of error. We affirm the trial court's rulings.

In the early 1980's, Woodson Walker established the Yedea Trust for his then-minor children and named Richard Mays as the trustee. In 1989, the trust acquired a tract of land in Little Rock. The owner of record for the property was the Yedea Trust, Richard Mays, trustee, c/o Walker, Roaf, Campbell, Ivory & Dunklin, 1 Union National Plaza, #990, Little Rock, Arkansas, 72201. Taxes were not paid on the land for the years of 1996, 1997, and 1998.

In 1998, Mr. Walker and his law firm moved from the Union National Bank Building to an office on 217 West Second Street in Little Rock. At this time, the law firm grew smaller as individual member attorneys started private practices. Appellant testified that he believed the trust was dissolved on or about the time that the law firm moved from the Union Building.

On February 22, 1999, the Pulaski County Collector, Assessor, and Recorder certified the Little Rock property to the Commissioner for non-payment of taxes for 1996, 1997, and 1998. On April 29, 1999, the Commissioner mailed a notice letter to appellant by certified mail, return receipt requested. The notice was sent to the certified address at appellant's former law firm in the Union National Bank Building. The letter stated that the property would be sold at public auction on May 1, 2001, if all taxes, penalties, interest, and costs were not paid by that date. The return receipt card was dated May 3, 1999, and was returned to the Commissioner's office bearing the purported signature of appellant's former law partner, Sheila F. Campbell. Ms. Campbell denies ever signing the card. The original receipt card with the signature was not produced.

Taxes remained delinquent on the property. On April 23, 2001, eight days prior to the sale, the Commissioner published a notice of sale of the property at public auction in the *Arkansas Democrat-Gazette*. The notice in the newspaper contained a description of the property at issue. The sale occurred as scheduled on May 1, 2001, and appellee bid $19,000.00 plus taxes, penalties, interest, and costs, for a total of $19,081.16. Appellee purchased the property.

The thirty-day redemption period passed, and appellant failed to redeem the property during that redemption period. After the expiration of the redemption period, the Commissioner issued a limited-warranty deed to appellee, who recorded the deed on June 12, 2001.

On June 28, 2001, appellee filed a petition to quiet title to the property. On February 23, 2002, appellant filed a separate petition to set aside tax title conveyance to appellee and to quiet title. This petition was amended on September 20, 2002. The two suits were consolidated, and on October 2, 2002, the case was tried in Pulaski County Circuit Court.

By letter order, the trial court granted appellees' petition to quiet title, ruling that appellant was the record owner of the property; that his former law firm's address was the address of record; that the "[t]he evidence is clear that the Land Commissioner's office complied with all statutory requirements" regarding notice of the sale; that notice to appellant personally is not required by the statute; that the statutes do not require that notice be sent to the beneficiaries; and that Ark. Code Ann. § 26-37-301(a) does

not violate the due-process clauses of the United States and Arkansas Constitutions. On December 31, 2002, a judgment of quiet title was entered in favor of appellees. From this order, appellant filed his appeal.

For his first point on appeal, appellant argues that the Commissioner published an incorrect legal description of the Little Rock property. Specifically, appellant contends that he was not given adequate notice of the sale because the Commissioner used an abbreviated land description of the land, thereby resulting in a *void ab initio* deed after such a publication. Further, appellant argues that the publication was an *ultra vires* act and "effectively divested the trial court of any authority to enforce the actions of the Commissioner[.]"

■ Appellant admits in his brief that this argument was raised for the first time on appeal. We have repeatedly held that we will not consider arguments raised for the first time on appeal. *Ford Motor Co. v. Arkansas Motor Vehicle Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004); *South Central Ark. Elec. Coop. v. Buck*, 354 Ark. 11, 117 S.W.3d 591 (2003); *Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002).

■ Accordingly, based upon our well-established precedent, and because appellant admits on appeal that his argument was not raised to the trial court, we hold that this issue was not preserved for appellate review, and we are barred from reaching the merits of appellant's first point on appeal.

For his second point on appeal, appellant argues that he was not provided with adequate notice as required by Ark. Code Ann. § 26-37-301 (Repl. 1997). Specifically, appellant contends that Pulaski County failed to provide the correct "last known address," pursuant to Ark. Code Ann. § 26-37-101 (Repl. 1997), to the Commissioner, notwithstanding that his current address was contained in the files of the county collector's office when it certified the delinquent-land list to the Commissioner.

■ The issue of notice given to the owner of tax-delinquent land is a matter of statutory interpretation. We review issues of statutory interpretation *de novo*, as it is for this court to decide what a statute means. *Mack v. Brazil, Adlong, & Winningham, PLC*, 357 Ark. 1, 159 S.W.3d 291 (2004). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be

accepted as correct on appeal. *Id.* A statute is to be given its plain meaning. *City of Dover v. City of Russellville*, 352 Ark. 299, 100 S.W.3d 689 (2003).

Arkansas Code Annotated § 26-37-101 *et seq.* (Repl. 1997) sets forth the procedure governing the forfeiture and sale of tax-delinquent land. Arkansas Code Annotated § 26-37-101 provides for the transfer of tax-delinquent lands to the Commissioner. The statute provides in pertinent part:

> (a)(1) All lands upon which the taxes have not been paid for one (1) year following the date the taxes were due, October 10, shall be forfeited to the State of Arkansas and transmitted by certification to the Commissioner of State Lands for collection or sale.
>
> (2) No tax-delinquent lands shall be sold at the county level.
>
> (b) The county collector shall hold all tax-delinquent lands in the county for one (1) year after the date of delinquency, and, if the lands are not redeemed by the certification date, which shall be no later than July 1 of the following year, *the collector shall transmit it to the state by certification, after notice as provided in this chapter, indicating all taxes, penalties, interest, and costs due and the name and last known address of the owner of record of the tax-delinquent lands.*

*Id.* (emphasis added).

Prior to certification to the Commissioner, the county assessor shall "[v]erify the name and last known address of the owner of record of the tax-delinquent land[.]" Ark. Code Ann. § 26-37-103(a)(2) (Repl. 1997).

Once the Commissioner's office receives a list of the tax-delinquent land, the Commissioner is charged with the duty to provide notice to the owner of his delinquency. Arkansas Code Annotated § 26-37-301, which provides for notice to the land-owner, provides in pertinent part:

> (a)(1) Subsequent to receiving tax-delinquent land, the Commissioner of State Lands shall notify the owner, *at the owner's last known address*, by certified mail, of the owner's right to redeem by paying all taxes, penalties, interest, and costs, including the cost of the notice.
>
> (2) All interested parties known to the Commissioner of State Lands shall receive notice of the sale from the Commissioner of State Lands in the same manner.

(c) For the purposes of this section, the terms "owner" and "interested party" shall mean any person, firm, corporation, or partnership holding title to or interest in the property by virtue of a recorded instrument at the time of certification to the Commissioner of State Lands.

(d) The Commissioner of State Lands shall not be required to notify, by certified mail or by any other means, any person, firm, corporation, or partnership whose title to or interest in the property is obtained subsequent to certification to the Commissioner of State Lands.

*Id.* (emphasis added).

■ In cases involving redemption of tax-delinquent lands, we have stated that strict compliance with the requirement of notice of the tax sales is required before an owner can be deprived of his or her property. *Tsann Kuen Enterprises Co. v. Campbell,* 355 Ark. 110, 129 S.W.3d 822 (2003); *Jones v. Double "D" Properties, Inc.,* 352 Ark. 39, 98 S.W.3d 405 (2003).

The crux of appellant's argument is that the Commissioner should have provided him with adequate notice because Pulaski County knew of his last known address. According to the testimony of Sandra Anthony, Delinquent Tax Enforcement Manager, the Pulaski County Collector's Office had two recent addresses of the Yedea Trust. At trial, the following colloquy occurred during direct examination of Ms. Anthony:

Q: Did I ask you about a week ago to go into your computer program to see what was the most recent address according to your computer? Was it last week or the week before you were asked to do that?

A: Right. Yes.

Q: Last week?

A: Yes.

Q: And what did you find to be the most recent address for the Yedea Trust when you were asked to do that?

A: As of now?

Q: After the initial address, what was the address—

A: The initial—217 West Second Street.

Q: And when did you—I believe I asked you to tell me by what date you had that information.

A: 1-28 of '98.

Q: So it's your testimony that at least by January 28, '98, you had received notice that the address for the Yedea Trust was no longer Number One Union National Plaza but was 217 West Second Street?

A: Correct.

Ms. Anthony further testified that the original address for the Yedea Trust was the Union Building address, but there were two more recent addresses in the collector's computer. On re-cross examination, Ms. Anthony testified that the last known address for the Yedea Trust was changed back to the Union Building address. It is unclear from the record whether someone in the collector's office or the assessor's office rolled the address back.

Appellant contends that the last known address, as reflected by Ms. Anthony's testimony, was the Second Street address, and that address should have been certified by Pulaski County to the Commissioner. However, the last known address that was certified by Pulaski County to the Commissioner was the Union Building address. In other words, there was some confusion at the county level as to the last known address. The Commissioner sent notice to the last known address that was made available to him by certification.

■ ■ We addressed a similar problem in *Tsann Kuen, supra,* where the appellant in that case failed to notify the tax collector that it had changed its address. In *Tsann,* we cited *Jones, supra,* for the proposition that the taxpayer has a duty to keep the collector's office advised of his or her change of address. We stated:

Tsann Kuen ignores the fact that its lack of notice was due to its own failure to notify the tax collector that it had changed its address. As previously stated, [Ark. Code Ann.] § 26-35-705 provides, in part, that "[i]n the event that the address of the taxpayer changes, the taxpayer has an obligation to furnish the correct address."

In *Jones, supra,* we noted that [Ark. Code Ann.] § 26-37-301 "does not require the Land Commissioner to take every step possible to see that the letter arrives in the property owner's hand; it only requires that the Commissioner 'shall notify the owner, at the owner's last known address, by certified mail, of the owner's right to redeem [the property.]' " *Jones,* 352 Ark. at 45, 98 S.W.3d 405.

*Tsann Kuen, supra.*

■ In the present case, there are two reasons that appellant's argument fails. First, the county assessor's verification of appellant's last known address, pursuant to Ark. Code Ann. § 26-37-103(a)(2), before certifying appellant's tax-delinquent land to the Commissioner, did not disclose a more current address. Second, it appears that appellant failed to provide his correct change of address to the Pulaski County Collector. If he had contacted the office, he could have cleared up any confusion as to which address was his last known address. Under Ark. Code Ann. § 26-35-705, appellant had "the obligation to furnish the correct address," and apparently, appellant failed to meet that obligation. As a consequence of appellant's inaction, the Commissioner was left with the address that had been given by the county office.

We note our holding in *Jones, supra,* where we construed Ark. Code Ann. § 26-37-301 to mean that the Commissioner is not required "to take every step possible to see that the [notice] letter arrives in the property owner's hand[.]" *Jones, supra.* We note that once the notice letter was sent, it was not returned to the Commissioner. Arkansas Code Annotated § 26-37-301 only requires one notice by the Commissioner. *See Wilson v. Daniels,* 64 Ark. App. 181, 980 S.W.2d 274 (1998).

■ Therefore, we hold that the Commissioner, subsequent to receiving the tax-delinquent land, sent a certified notice to appellant's last known address. Based upon our standard of review regarding the rules of statutory construction, as well as our case law involving tax-delinquent land, we conclude that the trial court properly granted appellee's petition to quiet title. Accordingly, we affirm the trial court on this point.

For his third point on appeal, appellant argues that the trial court abused its discretion by admitting a certified copy of a postal return receipt. Specifically, appellant contends that the trial court should have excluded this document under Ark. R. Evid. 1002 and 1003.

The best evidence rule requires that to prove the content of a writing, the original writing must be submitted, unless otherwise provided in the rules adopted by the Arkansas Supreme Court. Ark. R. Evid. 1002. However, a duplicate is admissible to the same extent as an original, unless a question is raised as to the authenticity or continuing effectiveness of the original, or if it would be unfair to admit the duplicate. Ark. R. Evid. 1003.

We have consistently held that trial courts are accorded wide discretion in evidentiary rulings, and we will reverse such rulings absent a manifest abuse of discretion. *Jackson v. Buchman*, 338 Ark. 467, 471, 996 S.W.2d 30, 33 (1999).

At trial, appellee introduced a certified copy of a certified mail return receipt card purportedly bearing the signature of Ms. Campbell. The card was verified by Ms. Lisa Pelton, an employee of the Commissioner and a custodian of land-sales records. Ms. Pelton testified that the certified copy was a true and accurate copy of the of the notice of delinquent real estate taxes that was maintained in the Commissioner's office in the normal course of business. She further testified that it was a true and accurate copy of the notice mailed on April 28, 1999, to appellant. The Commissioner did not produce the original at trial.

After hearing objections and arguments, the trial court ruled:

Under Rule 1003, admissibility of a duplicate, is — well, it is admissible to the same extent as an original unless, one, a genuine question is raised as to the authenticity or continuing effectiveness of the original or in circumstances it would be unfair to admit the duplicate in lieu of the original.

I don't see that either one of those two provisions apply. I will overrule the objection as to the admissibility due to it being a duplicate.

Appellant argues that this certified copy should not have been admitted because "the only proof that notice was sent by certified mail was a purported photocopy of the postal return

receipt allegedly signed by Sheila Campbell." At trial, Ms. Campbell testified that she did not sign the certified mail receipt.

Appellant's contention that the duplicate should not have been admitted because the questioning of the authenticity of Ms. Campbell's signature should fail. The trial court made the following ruling:

> The document speaks for itself. It's addressed to Richard Mays, trustee, care of Walker, Roaf, *et al.* I've heard the address. I know what it says.

Here, the copy of the return receipt card was not admitted to prove the signature of Ms. Campbell, but rather it was admitted to prove that notice had been mailed and was received at the last known address of the record owner. The copy of the return receipt contains the Union Building address, and the fact that the notice had been received at that address is shown by the return receipt. The required proof is that notice was mailed to that address and was received by someone at that address. The photocopy of the return receipt was sufficient to establish those facts. The authenticity of the signature is not at issue. Thus, under Ark. Code Ann. § 26-37-301, the Commissioner fulfilled his duties by sending notice to the address.

For these reasons, we hold that the trial court properly admitted the copy of the certified mail receipt. Accordingly, we affirm the trial court's ruling on the admissibility of this evidence.

Affirmed.