NO. 07-08-0356-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 27, 2010

_____


JOHNNY ANDREW SANCHEZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____


FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 07-03-6387; HONORABLE PAT PHELAN, JUDGE

_____


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Johnny Andrew Sanchez, was convicted by a jury of possession of a

controlled substance (cocaine) in an amount of four grams or more but less than 200

grams.[1]  He was sentenced to seven years confinement and assessed a fine of $10,000.  On appeal, Appellant asserts:  (1) the evidence at trial was legally and factually insufficient to establish that he knowingly possessed the cocaine; (2) the trial court erred by denying his motion to suppress and, alternatively, (3) the trial court erred by refusing to instruct the jury on the provisions of article 38.23 of the Texas Code of Criminal Procedure.[2]  We affirm.[3]

## Background

On February 16, 2006, Monty Peck rented a three bedroom, residential dwelling to Appellant and Chrisann Orosco pursuant to a joint Residency Tenancy Agreement (Agreement).  The Agreement provided that "[t]he term of the lease [was] a periodic tenancy commencing 12:00 noon on and continuing on a month to month basis until the Landlord or the Tenant terminates the tenancy."  The tenancy ran from the 16th to the 16th of each month and rent was due on or before the 16th of each month.  Until August

---

[1]*See* Tex. Health & Safety Code Ann. § 481.115(d) (Vernon 2010).  Although Appellant was originally charged with the offense of possession of a controlled substance with intent to deliver, Tex. Health & Safety Code Ann. § 481.112(d), the jury found him guilty of this lesser included offense.

[2]*See* Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).  Hereinafter, all provisions of the Texas Code of Criminal Procedure will simply be cited as "article ___" or "art. ___."

[3]In this proceeding, the State did not file a brief nor request additional time to do so.  Accordingly, we have conducted an independent analysis of the merits of Appellant's claim of error, limited to the arguments raised at trial by the State, to determine if there was error.  *See Little v. State*, 246 S.W.3d 391, 397-98 (Tex.App.--Amarillo 2008, no pet.).  The decision to independently review the merits of Appellant's issues should not be construed as an approval of the State's failure to file a brief.  *See* Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon 2005) ("Each district attorney shall represent the State in all criminal cases in the district courts of his district and appeals therefrom . . . .")  Although the State is not required to file a brief, the failure to do so requires this Court to expend valuable judicial resources to determine the parameters of the arguments presented to this Court for consideration.

of that year, either Appellant or Orosco paid the rent in cash on or before the 16th of each month.

Prior to the rent being due for the period running from August 16, 2006 to September 16, 2006, Peck received a call from Orosco saying "they" were moving out on August 16 because they had purchased a house. Thereafter, neither tenant offered to pay the rent and no rent payments were made. On August 21, Peck entered the house to inspect the premises to determine whether cleaning and repairs were necessary. Inside the house, he found partial pieces of a dresser, broken lamps, and trash bags filled with garbage. He found no food, clothing, or any indication anyone was living there. When he went outside to inspect the yard, he discovered that the lock on the storage shed had been changed, and he did not have a key to fit the lock.

After returning to the house to complete his inspection, Peck discovered a key on a shelf in the laundry room. He returned to the shed, tried the lock with the new key and it opened. Inside the storage shed, he found several five gallon drums of oil, truck batteries, and tools. In an open box, he discovered an open, Enfamil baby formula can containing a clear plastic bag of white powder, digital scales and, in the bottom of the box, a number of small green envelopes. He called the police and, after the officers arrived, he signed a form consenting to a search of the storage shed. The police searched the shed and recovered the box and its contents.

**Motion to Suppress**

Appellant filed a motion to suppress all evidence seized by the police. At the suppression hearing, Appellant asserted that his landlord's entry upon the premises, his subsequent discovery of cocaine in the storage shed, and his consent permitting the police to search the premises was illegal because Appellant retained a leasehold interest in the property. Appellant contended that, because his landlord did not give him thirty days notice prior to terminating his lease[4] and/or Appellant did not give Peck notice that *he* was leaving the premises on August 16th, his landlord had no authority to enter the premises.

The State countered that the landlord's consent was proper because Appellant had abandoned his leasehold interest prior to his landlord's consent and subsequent search. The State maintains that the landlord properly entered the premises per the Agreement's terms.[5] The trial court ruled that, prior to August 21, Appellant had abandoned the property and overruled Appellant's motion.

---

[4]The Agreement provided that "[a]ny notice to terminate this tenancy must comply with the Act." Paragraph 28 of the Agreement states, "[i]f there is a conflict between any provision of this Lease and the applicable legislation of the State of Texas (the 'Act'), the Act will prevail and such provisions of the Lease will be amended or deleted as necessary in order to comply with the Act." Appellant asserts that "the Act" refers to those provisions of the Texas Property Code that are applicable. The State, having filed no response, has made no objection. Accordingly, for purposes of this opinion, we accept Appellant's interpretation of this term of the Agreement.

[5]The Agreement contained the following provision, in pertinent part:

> 25. Abandonment. If any time during the term of this Lease, the Tenant abandons the Premises or any part of the Premises, the Landlord may, at its option, enter the Premises by any means without being liable for any prosecution for such entering, and without

4

**Trial**

Peck's testimony at trial largely mirrored that given at the suppression hearing. He testified that the Agreement required thirty days notice before either party could terminate the lease. He further testified that, after August 16, he sent a letter to Appellant and Orosco indicating they owed three weeks prorated rent or $487.50 because they only gave a week's notice before vacating on August 16. Peck deducted the prorated rent and repair expenses from their deposit.

Betty Modgling Steinhauser, a DPS latent print examiner, testified that two fingerprints belonging to Appellant were found on the bottom of the Enfamil can, and Scott Williams, a DPS forensic scientist, testified that the substance found in the Enfamil can was 140 grams of cocaine.

Orosco testified that the storage shed had a door that opened into the alley behind their house and someone could have accessed the storage shed from the alley. She also testified their baby was given Enfamil formula and Appellant would prepare the baby's bottles. She denied that she or Appellant ever used drugs or dealt drugs.

---

becoming liable to the Tenant for damages or for any kind of payment of any kind whatsoever, and may, at the Landlord's discretion, as agent for the Tenant, rent the Premises . . . for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such renting. . . . If the Landlord's right of re-entry is exercised following abandonment of the premises by the Tenant, then the Landlord may consider any personal property belonging to the Tenant and left on the Premises to also have been abandoned, in which case the Landlord may dispose of all such personal property in any manner the Landlord will deem proper and is relieved of all liability for doing so.

Regarding the lease, she testified that rent was due on the 16th of each month.[6]  She further testified she never entered the storage shed nor had she been close enough to notice whether a new lock had been installed on the shed door.  She also testified that she called Peck a week or two before they moved out of the house and told him they were moving.  When she and Appellant moved out, she testified they took everything worth taking.

Peck subsequently testified as a rebuttal witness for the State.  He indicated that the back door to the shed opening into the alley was barricaded by a piece of lumber sitting in brackets bolted to the shed's wall.  He testified that the back door was barricaded when he leased the property to Appellant and when he re-entered on August 21.  He also testified that, when he leased the property, the storage shed was empty.

### Jury Charge

At the charge conference, Appellant tendered an article 38.23 instruction asserting that the evidence at trial had raised a fact issue whether Peck's consent to

---

[6]Appellant asserts the rent was not due on any particular day of the month because Appellant's copy of the Agreement did not expressly state that the lease ran from the 16th to the 16th of each month.  However, the Agreement was signed February 16 and stated "the Lease is a periodic tenancy commencing at 12:00 noon on and continuing on a month-to-month basis," Peck's copy of the Agreement indicated that the rent was due on the 16th of each month, Appellant paid his rent on the 16th of each month, receipts issued by Peck to Appellant were for  a one month period--16th to 16th, Peck testified the tenancy ran from the 16th to the 16th of each month, and Orosco testified that their rent was due on the 16th of each  month.  Despite Appellant's assertion, all the evidence at trial indicated the parties agreed the rent was due on the 16th of each month and the month-to-month tenancy ran from the 16th to the 16th of each month.

6

search the shed was valid.[7]  The trial court overruled the request and instructed the jury.  Thereafter, Appellant was convicted of possession of a controlled substance (cocaine) in an amount of four grams or more but less than 200 grams, sentenced to seven years confinement, and assessed a fine of $10,000.  This appeal followed.

## Discussion

Appellant asserts the evidence is legally and factually insufficient because the State failed to show that Appellant exercised care, custody, or control over the cocaine located in the storage shed or that he had knowledge the substance in the Enfamil can was cocaine.  He next asserts the trial court erred in denying his motion to suppress because, under the Texas Property Code, Orosco's notice that they were vacating the premises on August 16 did not terminate their leasehold interest until September 2 (thirty days later).  Therefore, Peck's entry onto the property on August 21st and his subsequent consent to a search of the storage shed by law enforcement officers violated Appellant's continuing leasehold interest.  Finally, Appellant asserts the trial court erred by denying his article 38.23 instructions because there was a fact issue whether he had abandoned the premises or the lease was terminated on August 21.

---

[7]Article 38.23, termed the "Texas exclusionary rule," generally prohibits the admission of any evidence during a criminal trial that was obtained by a law enforcement officer in violation of the laws of Texas, and provides that in "any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."  Article 38.23(a).

### I. Legal and Factual Sufficiency

### A. Standard of Review

Heretofore appellate courts have struggled with the distinction between legal and factual sufficiency of the evidence challenges. The Texas Court of Criminal Appeals has recently held that the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia.* *See Brooks v. State,* No. PD-0210-09, 2010 WL 3894613 (Tex.Crim.App. Oct. 6, 2010) (plurality op.)[8] Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this Court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979)*.*

### B. Applicable Law

To support the verdict rendered in this case, the State was required to prove that Appellant knowingly possessed a controlled substance, to-wit: cocaine, in an amount of four grams or more but less than 200 grams. To prove *possession,* the State was

---

[8]While we are not bound by a plurality decision, *Pearson v. State,* 994 S.W.2d 176, 177 n.3 (Tex.Crim.App. 1999), we read the combined opinions of Judges Hervey and Cochran in *Brooks* as abandoning factual sufficiency as an evidentiary sufficiency standard of review distinct from legal sufficiency.

required to show that Appellant (1) exercised "actual care, custody, control, or management" of the substance and (2) knew the matter possessed was contraband. *See* § 481.102(38). *See also* Tex. Penal Code Ann. § 1.07(39) (Vernon Supp. 2008); *Poindexter v. State,* 153 S.W.3d 402, 405-06 (Tex.Crim.App. 2005).

When, as here, the accused does not have actual possession of the controlled substance or exclusive possession of the locale where the controlled substance was found, it cannot be concluded or presumed that the accused had possession over the contraband unless there are additional independent facts or circumstances that tend to connect or link[9] the accused to the knowing possession of the contraband. *Poindexter*, 153 S.W.3d at 406; *Evans v. State*, 202 S.W.3d 158, 161-62 (Tex.Crim.App. 2006); *Allen v. State*, 249 S.W.3d 680, 691 (Tex.App.–Austin 2008, no pet.).

A link is a fact or circumstance which generates a reasonable inference that the defendant knew of the contraband's existence and exercised control over it. *Lair v. State*, 265 S.W.3d 580, 600 (Tex.App.--Houston [1st Dist.] 2008, pet. ref'd). The evidence demonstrating such links may be direct or circumstantial. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).

Numerous nonexclusive factors have been recognized as contributing to an evaluation of whether an accused is linked to the contraband. *See Triplett v. State,* 292

---

[9]The Court of Criminal Appeals has recognized that the term "affirmative" adds nothing to the plain meaning of "link" and now uses only the word "link" to evaluate evidence of possession. *Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex.Crim.App. 2006).

S.W.3d 205, 208 (Tex.App.--Amarillo 2009, pet. ref'd). Those links include, but are not limited to: (1) whether the contraband was in plain view or recovered from an enclosed place or container; (2) whether the defendant was the owner of the premises or had the right to possess or control the place where the contraband was found; (3) whether the contraband was conveniently accessible to the defendant; (4) whether the defendant had a special connection to the contraband; and (5) whether any forensic evidence (e.g., fingerprints, DNA, etc.) connects the defendant to the contraband or its container. *See id. See also Evans*, 202 S.W.3d at 162 n.12; *Figueroa v. State*, 250 S.W.3d 490 (Tex.App.–Austin 2008, pet. ref'd), *cert. denied*, No. 08-7719, 2009 WL 425291 (U.S. Tex. Feb. 23, 2009).

There is no set formula that an appellate court can use to determine if there are sufficient links to support an inference of knowing possession of drugs. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex.App.–Dallas 2003, no pet.). Each case must be examined according to its own facts on a case-by-case basis. *Roberson v. State*, 80 S.W.3d 730, 736 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd). A factor that contributes to sufficiency in one situation may be of little or no value under a different set of facts. *Id.* Moreover, the number of links is not as important as the combined logical force of all the evidence tending to link the accused to the contraband. *Evans*, 202 S.W.3d at 162, 166.

## C.    Analysis

Viewing the evidence in a light most favorable to the verdict, the evidence at trial showed that Appellant leased a house including the storage shed where the controlled substance was found.  When Appellant moved into the house the shed was empty. After Appellant vacated the premises, the landlord discovered a new deadbolt on the door of the storage shed and he discovered a key that unlocked that deadbolt inside the house.  After unlocking the deadbolt, the landlord entered the shed and observed, in an open box, an Enfamil baby formula can.  In the can was a clear plastic bag containing a white powdery substance later identified as 140 grams of cocaine.  Digital scales and numerous, small green plastic bags were also located in the box with the cocaine. Appellant's fingerprints were on the Enfamil can.

From this evidence there are at least three factors supporting a reasonable inference that Appellant knew of the contraband's existence and exercised control over it: (1) the place where the cocaine was found was not open to the public, but was previously leased to Appellant, (2) the presence of other drug paraphernalia, not present before Appellant leased the premises, and (3) Appellant's fingerprints on the container in which the drugs were found.  Further, Enfamil was the brand of baby formula consumed by Appellant's child and the cocaine was in plain view on entry into the shed.  This evidence sufficiently links Appellant to the controlled substance and establishes, to the requisite level of confidence, that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Appellant's first issue is overruled.

11

### II.    Motion to Suppress

### A.    Standard of Review

The appropriate standard for reviewing a trial court's ruling on a motion to suppress is bifurcated, giving almost total deference to the trial court's determination of historical facts while reviewing the trial court's application of the law *de novo*. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000) (citing *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997)).  *See Hudson v. State*, 247 S.W.3d 780, 784 (Tex.App.--Amarillo 2008, no pet.).  In this case, the trial court did not make explicit findings of historical fact, so we review the evidence in a light most favorable to the trial court's ruling.  *Carmouche*, 10 S.W.3d at 327-28.  If the trial court's decision is correct on any theory of law applicable to the case, it will be sustained.  *Armendariz v. State,* 123 S.W.3d 401, 404 (Tex.Crim.App. 2003), *cert. denied*, 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004).  In addition, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony at a suppression hearing.  *See Torres v. State*, 182 S.W.3d 89, 902 (Tex.Crim.App. 2005).

### B.    Consent

The Fourth Amendment to the United States Constitution forbids unreasonable searches and seizures by government officials.  *O'Hara v. State*, 27 S.W.3d 548, 550 (Tex.Crim.App. 2000) (citing *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)).[10]  Although warrantless searches are generally presumed to be

---

[10] U.S. Const. amend. IV.  *See* Tex. Const. art. I, § 9; article 38.23.

unreasonable, there are recognized exceptions. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007) (citing *Maryland v. Dyson*, 517 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)). A well-established exception to the warrant and probable cause requirements of the Fourth Amendment is a search based on consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Reasor v. State*, 12 S.W.3d 813, 817 (Tex.Crim.App. 2000).

To be valid, consent must be voluntary; *Harrison v. State*, 205 S.W.3d 549, 552 (Tex.Crim.App. 2006), and consent must come from someone who has authority over the property. *See Georgia v. Randolph*, 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).[11] That said, consideration of Fourth Amendment rights involves more than an exercise in property law. *Salpas v. State*, 642 S.W.2d 71, 73 (Tex.App.--El Paso 1982, no pet.). *See Chapman v. United States*, 365 U.S. 610, 616-17, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). "'It is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions . . . [in] . . . the body of private property law,' and the Supreme Court [has] made it clear for a long time that courts 'ought not bow to them in the fair administration of criminal law.'" *Spring v. State*, 626 S.W.2d 37, 41 (Tex.Crim.App. 1981) (quoting *Jones v. United States*, 362 U.S. 257, 266-67, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). "The ultimate criteria is whether there was a violation of the claimant's

---

[11]It is a general rule that a landlord cannot normally give effective consent to allow a search of a tenant's premises. *McNairy v. State*, 835 S.W.2d 101, 105 (Tex.Crim.App. 1991) (citing *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961)). It cannot "be reasonably concluded that a tenant assumes a risk that his landlord will consent to a government search of his home simply by signing a lease." *Id. See Spring v. State*, 626 S.W.2d 37, 41 (Tex.Crim.App. 1981). "While a landlord has access to his tenant's property for some purposes, he certainly does not have mutual access and control for most purposes." *Welch v. State*, 93 S.W.3d 50, 54 (Tex.Crim.App. 2002).

legitimate or reasonable expectation of privacy." *Salpas*, 642 S.W.2d at 73 (citing *Rakas v. Illinois*, 439 U.S. 128, 58 L.Ed.2d 387 (1978)).[12] "In making this determination, property rights are relevant but are not the sole determinant." *Id.* (citing *United States v. Salvucci*, 448 U.S. 83, 65 L.Ed.2d 619, 100 S.Ct. 2547 (1980). "[T]he Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Further, "[w]hen the police take possession of property that has been abandoned independent of police misconduct, no seizure occurs under the Fourth Amendment." *Swearingen v. State*, 101 S.W.3d 89, 101 (Tex.Crim.App. 2003). Abandonment of property occurs if: (1) the defendant intended to abandon the property,[13] and (2) his decision to abandon the property was not due to police misconduct. *See McDuff v. State*, 939 S.W.2d 607, 616 (Tex.Crim.App. 1997). *See also Brimage v. State*, 918 S.W.2d 466, 507 (Tex.Crim.App.) (op. on reh'g *en banc*), *cert. denied*, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 66 (1996).[14] Moreover, when a defendant voluntarily abandons property, he lacks standing to contest the reasonableness of the search of the abandoned property. *McDuff*, 939 S.W.2d at 616.

---

[12] While the State has the burden to show that the person who consented to the search had actual or apparent authority to consent; *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Malone v. State*, 163 S.W.3d 785, 797-98 (Tex.App.--Texarkana 2005, pet. ref'd), the defendant bears the burden of establishing that he had a subjective expectation of privacy that society is prepared to recognize as reasonable. *Granados v. State*, 85 S.W.3d 217, 223 (Tex.Crim.App. 2002). *See Dawson v. State*, 868 S.W.2d 363, 370 (Tex.App.--Dallas 1993, pet. ref'd).

[13] "Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995)).

[14] Appellant makes no assertion that any decision to abandon his property was due to police misconduct.

14

## C. Analysis

The dispositive issue here, and at the suppression hearing, involves Peck's ability to lawfully consent to the warrantless search of the storage shed. Whether consent is valid is a question of fact to be determined from all the circumstances. *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App. 2002) (citing *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)).

At the suppression hearing, Peck testified that he rented a house to Appellant and Orosco on February 16, 2008, pursuant to an Agreement. The tenancy was a month-to-month tenancy beginning on the 16th of each month. The Agreement also provided that, if at any time during the lease the premises were abandoned, Peck had the option to re-enter the premises and consider any personal property belonging to the tenants, that remained, as abandoned property to be disposed in any manner Peck deemed proper.

Prior to the rent being due for the month running from August 16 to September 16, Peck received a call from Orosco indicating that she and Appellant were moving out on August 16 because they had bought a house. No one made any rent payments after the call and there is no evidence there were any further communication between either Appellant or Orosco and Peck. When Peck entered the house on August 21, he found partial pieces of splintered furniture and trash bags filled with garbage. There was no food or clothing in the house--no evidence anyone was living there.[15]

---

[15]Appellant and Orosco executed the Agreement as joint tenants. The Agreement provided that "[w]here there is more than one Tenant executing this Lease, all Tenants are jointly and severably liable *for each*

15

Under these circumstances, the trial court could reasonably find that Appellant had voluntarily abandoned the house and Peck was authorized to act pursuant to the Agreement's provision related to abandonment. The Court of Criminal Appeals decision in *Swearingen, supra,* is particularly instructive. In *Swearingen*, the defendant and his wife agreed to live with his parents and notified their landlord on December 24, 1998, that they had to move. On January 6, 1999, Officer Mock went to the rental property and discovered the landlord had just cleaned the rent trailer out in order to rent it to another party. The landlord showed Officer Mock where he had thrown out the trash and the officer discovered evidence incriminating the defendant in a crime. The *Swearingen* Court held that the incriminating evidence was admissible at trial because defendant had abandoned his trailer prior to January 6, 1999, and lacked standing to complain about any search of the rent trailer or the trash removed from the trailer on that date. *Id.* at 101.

Because Appellant vacated the premises and ceased paying rent, we also find Appellant abandoned the rental house prior to August 21 and, under the lease, Peck was authorized to re-enter the house and storage shed, dispose of the contents, and consent to a search of the premises by the police. Vacating the premises coupled with cessation of rent payments constitutes abandonment. *See Lucky v. Fidelity Union Life Insurance Company*, 339 S.W.2d 956, 959 (Tex.Civ.App.--Dallas 1960, no writ).

---

*other's acts, omissions and liabilities pursuant to this Lease.*" Although, technically, "under Texas law, 'each owner in a co-tenancy acts for himself and no one is agent of another or has any authority to bind him merely because of the relationship'"; *Brockelmann v. Marynick*, 788 S.W.2d 569, 572 (Tex. 1990), the trial court could reasonably infer that Orosco's notice also encompassed Appellant because all of the evidence at the hearing indicated Appellant and Orosco vacated the premises at or about the same time prior to Peck's inspection on August 21 and no further rent payments were made.

The trial court did not abuse its discretion in denying Appellant's motion because Appellant had no standing to challenge the search.[16] On August 21, Appellant had no possessory interest in the rent property--notice was given that Appellant was vacating the premises, Appellant vacated the premises, and no rent had been paid for the tenancy period of August 16 through September 16.

Appellant contends that his tenancy did not terminate until September 2 because his landlord did not give Appellant thirty days notice prior to terminating the Agreement. Appellant asserts that, because the Agreement was governed by the Texas Property Code, more specifically section 91.001, he was due thirty days notice before any termination by his landlord could take place. *See* Tex. Prop. Code Ann. § 91.001(a), (b) (Vernon 2007). However, here, Orosco gave Peck notice that they would be moving out on August 16 and would not, and in fact did not, pay any rent thereafter. Prior to August 21 when he re-entered the property, there is no evidence of record that Peck took any steps to terminate the Agreement or otherwise bring the Agreement to a premature end. Rather, the record supports the premise that, because Appellant vacated the premises

---

[16]S*ee Salpas v. State*, 642 S.W.2d 71, 73 (Tex.App.--El Paso 1982, no pet.) (where landlord took possession due to default in rent payments, subsequent entry by police with landlord's permission did not violate tenant's expectation of privacy). *See also Brimage*, 918 S.W.2d at 507 (defendant failed to establish standing to object to a search of his hotel room and contents when his suitcase was found in his hotel room after check-out time and defendant had paid for a one night stay); *Bass v. State*, 713 S.W.2d 782, 786 (Tex.App.--Houston [14th Dist.] 1986, no pet.) (where hotel operator took possession of a guest's luggage after he failed to pay his bill, held guest had no standing to challenge search); *Ferris v. State*, 640 S.W.2d 636, 638 (Tex.App.--El Paso 1982, pet. ref'd) (failure of tenant of rental storage locker to pay the rental price gave landlord the right to enter and consent to search of storage locker by police).

17

without paying any further rent, Appellant abandoned the premises. *See Lucky*, 339 S.W.2d at 959. [17] Accordingly, Appellant's second issue is overruled.

### III. Jury Instruction

### A. Standard of Review

When reviewing the record for jury charge error, we must first determine whether error actually occurred and, if so, whether sufficient harm resulted from the error to require reversal of the conviction. *Rodriguez v. State*, 239 S.W.3d 277, 280 (Tex.App.--Amarillo 2007, no pet.) (citing *Hutch v. State*, 922 S.W.2d 166, 170-71 (Tex.Crim.App. 1996).

### B. Article 38.23 Instruction

Article 38.23 prohibits the use of any evidence against an accused in a criminal trial if the evidence "was obtained by an officer or other person in violation of any Texas state or federal law including the Texas and United States Constitutions. Article

---

[17]The result is the same whether or not Orosco spoke for Appellant when she informed Peck the two were moving out. If not, then Appellant vacated the premises and ceased paying rent with no notice. The result is also the same whether Appellant's act of vacating the premises and cessation of rent is viewed as "abandonment" or "termination." "Under Texas law, if the tenant vacates the premises and the landlord accepts possession, then an implied agreement to terminate the lease has been established." *In re Perry*, 411 B.R. 368, 375 (Bankr. S.D.Tex. 2009). Here, Peck re-entered the premises, cleaned out the house, and placed its contents in or near the dumpster in the alley--acts consistent with the notion that he was exercising his rights under the Agreement and had regained possession of the premises after Appellant vacated and was no longer paying rent. Appellant's citation to *M.L.C. Loan Corp. v. P.K. Foods, Inc.*, 541 S.W.2d 902 (Tex.Civ.App.--Beaumont 1976, no writ), is of no avail. In *M.L.C. Loan Corp.*, the tenant attempted to make a full rent payment within a grace period offered by the landlord but the landlord refused the payment and declared the property abandoned before the grace period had expired. *Id.* at 903. *M.L.C. Loan Corp.* is inapposite because, here, the landlord received notice Appellant was vacating the leased premises, Appellant vacated the premises, Peck offered no grace period and Appellant neither offered nor paid any further rent after August 21.

38.23(a). Further, article 38.23 provides that, if the evidence at the criminal trial raises an issue whether certain evidence was obtained in violation of state or federal law, the jury shall be instructed to disregard the evidence if it "believes, or has a reasonable doubt, that the evidence was obtained in violation of [Article 38.23]." *Id.*

Appellant urges he was entitled to such an instruction because there was a factual issue whether Appellant had abandoned the rental property and, consequently, whether Peck had authority to permit law enforcement officers to search the premises including the storage shed. A jury instruction under article 38.23 is required only when there is a factual dispute concerning the legality of the seizure of evidence. *Garza v. State*, 126 S.W.3d 79, 85 (Tex.Crim.App. 2004); *Rodriguez*, 239 S.W.3d at 280. Accordingly, we must first determine whether there was a factual issue requiring an article 38.23 instruction.

In support, Appellant asserts the following evidence raised such a fact issue: (1) there was a substantial amount of personal property left in the storage shed; (2) the storage shed had been fortified with a new deadbolt lock; (3) there was a car parked at the house; and (4) Appellant was later billed for three weeks rent after he moved out of the rent house.

Asserting that Appellant did not abandon the rental property because he left personal property in the storage shed after moving out of the house begs the question whether the rental property was abandoned. Further, that Appellant may have fortified the shed door with a deadbolt lock to protect *his personal property* is not evidence Appellant did not intend to abandon *the rental property*. Appellant vacated the premises

19

and ceased paying rent. At that point, Appellant no longer had any leasehold interest in the rental property[18] and, under the terms of the lease, Peck "[could] consider any personal property belonging to [Appellant] and left on the Premises to also have been abandoned." In addition, when he vacated the premises, he left a key to the deadbolt in the rent house which the landlord found on re-entry. Leaving a key to the shed in the rent house after vacating the premises is consistent with an intent to abandon the premises as well as the personal property in the shed. Although there was a car parked at the residence, the record reflects that Peck did not recognize the vehicle and believed that it too had been abandoned. There was no evidence of record regarding the vehicle's ownership or how long it had been parked on the premises.

Finally, the evidence at trial does not support Appellant's assertion that he was billed for an additional three weeks rent entitling him to possession of the rental property after August 16. Rather, Peck's testimony at trial indicates he deducted three weeks rent from Appellant's deposit as a penalty for abandoning the premises without giving thirty days notice of termination as required by the Agreement. Thus, while Appellant may contest the legal effect of his actions, there was not a factual dispute presented with respect to those actions.

---

[18]Under Texas property law, had Appellant continued to pay his rent after Orosco had given notice that they were moving and he vacated the premises, he would have made an election to exercise an implied option to renew his Agreement. *Pratt v. Dallas County*, 531 S.W.2d 904, 905 (Tex.App.--Waco 1975, writ ref'd n.r.e.). Appellant's Agreement did not call for a formal notice to renew, thus his Agreement was impliedly renewed when he paid the rent for the next month and the landlord accepted the rent payment. *See id.* At that point, under the terms of his Agreement, Appellant would have been entitled to thirty days notice before Peck could terminate the leasehold. In a month-to-month lease such as Appellant's, either party to the lease is authorized to terminate the lease for any reason upon one month's notice. *Struve v. Park Place Apartments*, 923 S.W.2d 50, 52 (Tex.App.--Tyler 1995, pet. denied).

20

Having found no factual dispute, the trial court did not err in rejecting Appellant's proposed jury instruction. We overrule Appellant's third issue.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.